**STATE of Missouri, Plaintiff-Respondent,**

v.

**Leon DENT, Defendant-Appellant.**

**No. 55144.**

Supreme Court of Missouri,
Division No. 1.

Nov. 8, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1971.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Bell, Fullwood, Wilson & Harris by James A. Bell, Allen I. Harris, St. Louis, for appellant.

WELBORN, Commissioner.

A jury in the St. Louis Circuit Court found Leon Dent guilty of assault with intent to do great bodily harm with malice, § 559.180, RSMo 1969, V.A.M.S. See State v. Gillespie, Mo.Sup., 336 S.W.2d 677, 681. Punishment was fixed by the jury at seven years' imprisonment.

Dent was a Lieutenant General in an organization known as "The Black Liberators," with headquarters at 2810 Easton in the City of St. Louis. Oscar James King, Jr., denied that he was ever a member of The Black Liberators, although defense testimony at trial was that King had been a member and was expelled.

On December 16, 1968, King went to the Liberators' headquarters at around 8:30 A. M. There he was given a rifle by a man whom he identified as "Sergeant Tony." King took the rifle to Mr. Moss on 23rd Street and attempted to sell it to Moss. The rifle was left with Moss. Dent saw King shortly thereafter at a filling station near the headquarters and asked, "Have you seen my piece?" King said he didn't

know what Dent was talking about and Dent asked King to accompany him and three persons with Dent to headquarters. King did so and there saw "Sergeant Tony" tied to some pipes. Tony said, "That's the fellow, that is the one that got the rifle." There followed, according to King, a series of beatings of King by Dent and others. King testified that he was beaten with clothes hangers. After several incidents of beating and torture in which Dent participated, King was put in an auto outside Liberator headquarters and Dent said they were going to Moss to get the rifle back. They went to an address on Rutger where Dent went into a house and returned with a pistol which he pointed at King and said "he ought to blow me out of the back seat." They returned to headquarters and then again to the Rutger address where Dent and the driver went into the house and returned with a rifle to use if Moss "wanted to start any stuff when they went to get the [Dent's] rifle." They went to Moss's address on 23rd Street where Moss gave the rifle to the driver. They drove to an address on Vista where Dent left the rifle. After three beatings en route back to headquarters, King was again taken into headquarters where Dent knocked him down and "stamped" him in the back with his feet. After five or ten others "stamped" King, Dent beat him on the head with a broom.

When some other Liberator members interceded with Dent and took him to another room, King attempted to escape. He reached his residence at 2804 Franklin but was unable to climb the stairs. Some Liberators, including Dent, pursued King. They seized him on the stair after Dent had fired two shots through a broken window. King was brought back to Liberator headquarters and again beaten. Then he was placed in a car and driven to a place near the Mississippi River in Illinois. There Dent threatened to kill him and throw him in the river. When another auto appeared at the scene, Dent did not go through with the threat to kill King. Instead, Dent and the Liberators decided to take King to the hospital. According to King, Dent told him:

"Oscar, I am going to take you to the hospital, but I tell you what I want you to tell the policemen if they ask you, that you were grabbed by a gang of boys on Twentieth or Seventeenth and Cole, and if you don't you know I know your family and I know where they are staying, and I know you don't want to see any of them hurt, and after you get out of the hospital, I want you out of this town."

Dent and two other Liberators took King to Homer G. Phillips Hospital in St. Louis. King was admitted to the hospital at 7:45 P.M., December 16, 1968. He was suffering from a cerebral concussion, multiple lacerations and a fractured mandible.

At the hospital, King was questioned by police officers and told them substantially the story he said Dent had told him to give. He subsequently told officers that story was not true and on December 19, Dent was arrested for the assault on King.

At the trial, witnesses for the defendant testified that they saw four persons attack King at 16th and Cole. One of the witnesses who said she was King's girl friend said she was with King at the time and she called Dent. Dent testified that he went to 16th and Cole in response to a call from a woman, telling him that King was in trouble there. He testified that he found King there and took him to the hospital.

Police officers who questioned King at the hospital saw Dent there and questioned him. According to the officers, Dent identified himself as Ronald Jackson and said he had brought King to the hospital.

■ King's recital of the incident, as outlined above, was substantial evidence from which the jury might find appellant guilty of the charge for which he was tried. In arguing King's credibility in support of his claim of insufficient evidence, appellant is arguing a matter within the jury's province. The weight of King's testimony as

contrasted with that of the defense is likewise not a matter for consideration here. State v. Hicks, Mo.Sup., 438 S.W.2d 215, 219; State v. Morgan, Mo.Sup., 453 S.W.2d 932. There was substantial evidence to support the verdict and that is the extent of this court's inquiry on this point.

■ Appellant assigns as error the trial court's refusal to permit a defense witness to testify to a prior statement of King that Dent had him expelled from The Black Liberators and that he was going to get even with Dent if it was the last thing he did. Appellant argues that the testimony showed bias and prejudice of King toward Dent and was therefore admissible as going to his credibility. The trial court's ruling was based upon the absence of any inquiry directed to King while a witness, pertaining to the statement alleged to show his bias. Missouri adheres to the requirement that a witness, sought to be impeached by prior statements evidencing bias, must first be asked, when he is on the stand, whether or not he made the statement intended to be proved against him. State v. Pigques, Mo.Sup., 310 S.W.2d 942, 947 [7, 8]; State v. McLachlan, Mo.Sup., 283 S.W.2d 487, 489 [1–4]; III A Wigmore on Evidence (Chadbourn Rev.), § 953, pp. 800–802. Appellant does not contend that King was asked directly whether or not he made the statement which, according to the offer of proof, the witness would have attributed to him. Appellant's position is that King's denial on cross-examination that he was ever a member of the Liberators dispensed with the necessity of any further inquiry as a foundation for statements of King showing a feeling of hostility or bias by reason of his expulsion from the organization. The inquiry made was not adequate to put the witness on notice that he was to be impeached by prior statements evidencing bias against the accused. The trial court's ruling was not error.

■ The appellant assigns as error the trial court's unreasonable limitation of cross-examination of King as to a "deal" with the police to assist him in a charge pending against the witness in return for cooperation in the prosecution of Dent. The only reference to this matter in the transcript is an inquiry on the cross-examination of King. No objection was made to the inquiry. When King denied any deal, the subject was dropped. No ruling by the trial court was involved.

■ Appellant's final assignment of error is based upon the trial court's refusal of a continuance. The trial was held on June 17 and 18, 1969, the cause having been set for trial at that date some time previously. The state had arranged for the presence at that time of King who was in custody of federal authorities in Georgia. On Sunday, June 15, 1969, a group of black militants using the name "Black Liberation Front" had made a claim against churches in St. Louis for $500,000,000 reparation for wrongs to blacks. Groups of members of the Black Liberation Front had interrupted services in several churches on Sunday and considerable publicity had been given their activities by news media.

Appellant's counsel moved for a continuance on the grounds that Dent had been a member and leader of "The Black Liberators," and, although that organization was separate and different from the "Black Liberation Front," the publicity which the latter group had received had so inflamed the community that a fair trial of Dent could not be had. Appellant complained particularly that jurors would not differentiate between the two organizations.

The trial court denied the motion because the two groups were not the same and the defendant was not a member of the Black Liberation Front. The trial court pointed out that that organization had announced its plan to continue indefinitely its activities and that a continuance, based on their activities, could cause an indefinite postponement. The state was also warned by the trial court to make no use of Dent's membership in The Black Liberators in order to influence the jury. Defense counsel

then advised the court that its ruling would necessitate his going into the matter on voir dire in order to make clear that Dent was not associated with the Black Liberation Front. However, the transcript of the voir dire shows only minimal reference to the Black Liberation Front. Defense counsel asked one panel whether they had heard of the Front. An affirmative reply was received. Explanation was made to that panel that appellant was not a member of the Front.

On this appeal, the claim of error in the refusal of the continuance is based upon the contention that the publicity given the "Black Liberation Front" activities prejudiced appellant because the jury might have confused "The Black Liberators" and the "Black Liberation Front." We find no abuse of the discretion accorded the trial court in ruling upon a motion for continuance. State v. Rollins, Mo.Sup., 449 S.W. 2d 585, 587–588 [1], cert. den. 399 U.S. 915, 90 S.Ct. 2220, 26 L.Ed.2d 573; State v. Drope, Mo.Sup., 462 S.W.2d 677, 684 [7, 8]; State v. Glenn, Mo.Sup., 429 S.W. 2d 225, 230 [1, 2]. The publicity here complained of did not deal with the offense charged against the appellant. Voir dire examination produced no evidence that the jurors might confuse the two organizations involved. The trial court was confronted with a threat of continuing activity on the part of the Front which could have produced indefinite postponement of the trial and could have caused a far greater potential for prejudice than the occasions on the day prior to trial. In view of such considerations, no abuse of discretion on the part of the trial court appears. The situation here is in no manner comparable with that presented in cases relied upon by appellant, such as Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600, Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751, and United States v. Daniels, D.C., 282 F.Supp. 360.

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the court.

All of the Judges concur.