**STATE of Missouri, Plaintiff–Respondent,**

v.

**Thomas E. LAUER, Defendant–Appellant.**

No. 21470.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 6, 1997.

Deborah B. Wafer, Dist. Defender, St. Louis, for defendant–appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for plaintiff–respondent.

SHRUM, Judge.

Thomas E. Lauer (Defendant) was convicted after a bench trial of Class B felony first degree assault in violation of § 565.050 and Class C felony child abuse in violation of § 568.060.[1] Defendant appeals, claiming there was not sufficient substantial evidence to support either conviction. This court disagrees. We affirm.

---

1. All statutory references are to RSMo 1994 un-    less otherwise indicated.

## FACTS

Around 6:30 on the morning of March 7, 1996, Carrie B. was awakened by the crying of her two-year-old son M___. Carrie left her bed and entered the living room to find Defendant, her live-in boyfriend, spanking M___ on his bare buttocks and covering M___'s mouth with his hand. Defendant and M___ had been sleeping on the couch. M___ had urinated in his sleep and this prompted Defendant to "spank" M___.

Carrie asked Defendant to stop spanking the child, but he continued. Defendant told Carrie to leave the room, and she complied. Carrie went back to the living room where she and Defendant started to argue about what he was doing to M___.

At some point, Defendant placed M___ in a bathtub filled with cold water. Carrie testified that M___ was very upset and shaking while in the tub of cold water. She removed her son from the tub, wrapped him in a towel, and sent him to the bedroom. While Carrie was in the bathroom, Defendant kicked her.

Carrie and Defendant both went into the bedroom where they resumed arguing. Defendant struck Carrie in the eye with his fist. Carrie hit him back. Defendant then struck Carrie with his fists multiple times in her face and on her head. Carrie described these blows as "hard" and stated that the blows "hurt." According to Carrie's testimony the assault in the bedroom by Defendant lasted fifteen minutes.

Carrie sustained a concussion and bruises to her eyes as a result of Defendant's blows to her head and face. Carrie also sustained a cut to her leg which required stitches, bruises on her legs, and a bruise on her neck. Carrie was uncertain of how she suffered the injuries to her legs and neck.

Defendant told Carrie that if she turned him in . . . he would "beat [her] up worse." Carrie wanted to take her son and leave, but Defendant would not let them leave. Also, Defendant would not let Carrie stay in the same room with M___. Nearly three hours later, at approximately 9:30 a.m., Defendant allowed Carrie and M___ to leave. Near the time she left, Carrie noticed bruises on M___'s face and forehead. She testified that these bruises were not present when she went to bed and that she had not hit her son.

Later, Carrie was treated at a local hospital. M___ was examined by Samuel Brayfield a doctor of osteopathic medicine specially trained in the recognition and treatment of child abuse. Dr. Brayfield testified, among other things, regarding bruises on M___'s face, scalp, ear, neck, upper back, lower back, buttocks, thighs, shoulder, arms, and area above the penis. Dr. Brayfield stated that the multiple bruises and the apparent ages of the bruises constituted "a classic sign of an abused and battered child." Dr. Brayfield also noted that M___ seemed to be "well-bonded to his mother" and displayed "a fairly good interaction between a mother and a child."

Defendant was eventually arrested. He stated to one police officer that he was responsible for M___'s discipline and that he had spanked the child. Defendant remarked that he had disciplined the child in relation to "potty training." He also admitted that he had placed the child in cold water. Defendant said that Carrie had told him that the water in which he placed M___ was too cold. He also stated that Carrie told him he was being too rough on M___. Another officer testified that Defendant admitted that he had been the sole disciplinarian of M___, and that he had been too rough with the child. Defendant, however, denied striking M___ in the face or engaging in acts of sexual abuse.

After hearing this and other evidence, the trial judge convicted Defendant of Class B felony first degree assault for beating Carrie. He also convicted Defendant of Class C felony child abuse in relation to his beating of M___'s head and body. This appeal followed.

## DISCUSSION AND DECISION

*Standard of Review:*

■■■ Defendant's two points on appeal challenge the sufficiency of the evidence to support his convictions. The standard for reviewing the sufficiency of evidence in a criminal case when tried by a judge is the same as when reviewing a jury-tried case. *State v. Sladek*, 835 S.W.2d 308, 310[1] (Mo.

banc 1992). An appellate court does not weigh the evidence but accepts as true all evidence tending to prove guilt along with all reasonable inferences that support the decision of the trial court. *Id.* at 310. We ignore all contrary evidence and inferences. *Id.* We determine whether there was sufficient evidence for the court as trier of fact to reach its judgment. *Id.* at 310[1].

■■■ We note that witness testimony comprised the majority of the evidence adduced at trial. Witness testimony is for a trial court to consider as the trier of fact. *State v. Helmig,* 924 S.W.2d 562, 565 (Mo. App.1996). The trial court may believe all or part of a witness' testimony, or none of a witness' testimony. *State v. Martin,* 850 S.W.2d 421, 422[3] (Mo.App.1993). An appellate court will not determine the credibility of witness testimony. *State v. Brewer,* 861 S.W.2d 765, 766 (Mo.App.1993).

*Point I: Sufficiency Of Evidence In The Assault Conviction*

The crime of first degree assault is defined in § 565.050.1 as follows:

"A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person."

In his first point, Defendant argues there was insufficient evidence to support the trial court's judgment because the State failed to prove that he attempted to cause Carrie serious physical injury. Defendant asserts that "[a]t most, [I] only attempted to cause physical injury, not serious physical injury." To support this proposition, Defendant says: "[I] did not use a weapon, evidence does not indicate Carrie feared sustaining a serious physical injury and [I] discontinued [my] attack [on Carrie]."

Initially, we note that the use of a weapon is not an element of Class B felony first degree assault. *See* § 565.050.1–2. In addition, the fact that Defendant ceased his attack has little or no bearing on whether he knowingly attempted to cause death or serious physical injury. Finally, a victim's fear of an attacker is likewise not an element of the crime.

Missouri courts have recognized that beating with fists can cause death or serious physical injury within the parameters of the first degree assault statute. *State v. Wheadon,* 779 S.W.2d 708, 711[3] (Mo.App.1989). Defendant attempts to distinguish *Wheadon* by arguing that the damage inflicted by the *Wheadon* defendant was more severe than the damage Defendant inflicted on Carrie. Defendant misses the point that the extent of a victim's injuries (or even whether the victim is injured at all) is not a necessary element of Class B felony first degree assault when a defendant is charged with knowingly attempting to cause serious physical injury to another person. *Wheadon,* 779 S.W.2d at 711; *See also State v. McMahan,* 821 S.W.2d 110, 112[2] (Mo.App.1991).

■■■ The evidence adduced at trial supported a finding that Defendant knowingly attempted to cause serious physical injury to Carrie. First, the entire episode in the bedroom lasted ten to fifteen minutes. Defendant threw multiple blows as he assaulted Carrie. While the facts are unclear as to the length of the actual beating, the trial court could have reasonably inferred that Defendant knowingly engaged in this beating. Also, Defendant told Carrie that if she turned him in, he would give her a more severe beating. These facts clearly indicated that Defendant knowingly committed this act.

Further, the facts in evidence supported a finding that this attack was an attempt to cause serious physical harm. Defendant struck Carrie with multiple blows to the head. These were hard blows and resulted in a concussion. The trial court could have reasonably inferred from Defendant's kicking of Carrie that he was attempting to cause serious physical harm.

In addition, Carrie suffered a gash in her leg that required stitches. While Carrie gave somewhat conflicting testimony about how she sustained this gash, the trial court could have reasonably attributed Carrie's confusion to effects of the concussion she suffered at Defendant's hands. Based on the evidence, it was entirely probable that Defendant's blows to Carrie's head or the reason-

able and probable consequences of his blows caused Carrie to fall and suffer the gash in her leg. Thus, the trial court could have reasonably inferred that Defendant intended to cause this gash. *See State v. O'Brien,* 857 S.W.2d 212, 218[9] (Mo.banc 1993). While the gash itself may not have constituted serious physical injury, the fact that Defendant intended to cause this wound with his blows or as a result of his blows strengthened the inference that Defendant attempted to cause serious physical harm.

The evidence in the record supports the trial court's judgment. Defendant's first point is denied.

*Point II: Sufficiency Of Evidence In The Child Abuse Conviction*

■ Defendant's second point contends the evidence at trial did not support a finding that Defendant inflicted cruel and inhuman punishment upon M___. Defendant also contends there is an equally valid inference that Carrie caused the injuries to M___. We address these two contentions separately.

The crime of Class C felony child abuse, of which Defendant was convicted, is defined in § 568.060 as follows:

"1. A person commits the crime of abuse of a child if he:

"(1) Knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old . . .

. . . .

"3. Abuse of a child is a class C felony, unless in the course thereof the person inflicts serious emotional injury on the child . . . ."

Defendant contends that "hand spanking" does not constitute cruel and inhuman punishment. He asserts that "hand spanking" is an accepted form of discipline and, therefore, could not be cruel and inhuman punishment.

The trial court found that Defendant's acts of cruel and inhuman punishment involved his beating of M___'s face and body. Among the multiple bruises found on M___ were bruises on his buttocks, anterior and posterior thighs, and lower back. The trial court could reasonably have found that bruises in these areas were the result of Defendant's adult hand beating the small body of a two-

year-old. Defendant admitted he was the one who disciplined the child. He also admitted that he had spanked the child. Defendant further admitted that he had been too rough on the child.

Certainly, many people might agree that spanking is an acceptable form of disciplining children. Yet, it would defy the conscience to find that beating a two-year-old child in such a manner as to leave the type and number of bruises described in the record does not constitute cruel and inhuman punishment. A finding that this beating does not constitute cruel and inhuman punishment would also defy the law. Direct evidence that Defendant struck M___ with enough force to cause these bruises is sufficient to support the trial court's finding that this beating constituted cruel and inhuman punishment. *See State v. Sumowski,* 794 S.W.2d 643, 646 (Mo.banc 1990). The evidence in the record overwhelmingly supports the trial court's judgment that Defendant inflicted cruel and inhuman punishment on M___.

Defendant argues that there was an equally valid inference that Carrie caused the injuries to M___. Again, the trial court can believe any part of a witness' testimony. *Martin,* 850 S.W.2d at 422[3]. It is apparent that the trial court believed Carrie's testimony that she did not hit her son. Her testimony further indicated that M___ was not bruised when she went to bed, and that Defendant and M___ were on the couch when she went to bed. It is undisputed that Father was spanking M___ on the couch that morning. In addition to Carrie's testimony, the testimony of other witnesses defeats Defendant's "equally valid inference" argument. Defendant's statements to the police relate that he was the sole person who administered discipline to M___. In his statements to the police, the forms of discipline he admits using are consistent with Carrie's testimony regarding the events of March 7, 1996. The testimony of M___'s grandmother indicates that M___ feared Defendant. In contrast, Dr. Brayfield's testimony relates that Carrie and M___ were "well-bonded."

Viewed under our scope of review, there is no equally valid inference from the evidence

that Carrie committed the abuse Defendant was convicted of committing. Point II is denied.

The judgment is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.