STATE of Missouri, Plaintiff–
Respondent,

v.

Morris D. FRAGA, Defendant–
Appellant.

No. 26709.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 31, 2006.

Rehearing Denied Feb. 16, 2006.

Randy S. Anglen, Branson, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, MO, for respondent.

JEFFREY W. BATES, Chief Judge.

In April 2003, Morris Fraga ("Defendant") rammed his car into another vehicle being driven by Amanda Cook ("Victim"). The collision forced Victim's car off the road. She was injured, and her vehicle sustained over $2,300 in damages. Defendant was charged with committing the class C felony of second degree assault. *See* § 565.060.[1] He was convicted of this offense after a bench trial. On appeal, Defendant contends his conviction should be reversed because there was insufficient evidence to prove beyond a reasonable doubt that he intended to physically harm Victim. Defendant admits forcing Victim's car off the road; however, he argues the only reasonable inference supported by the evidence was that he simply wanted to stop Victim in order to lecture her about her driving. Finding no merit in this argument, we affirm.

## I. Standard of Review

■■■■ This case was tried to the court after Defendant waived his right to a jury trial. In a court-tried criminal case, the judge's findings have the force and effect of a jury verdict. Rule 27.01(b); *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002).[2] Therefore, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same. *State v. Lauer,* 955 S.W.2d 23, 24 (Mo.App.1997). Appellate review is limited to determining whether there was sufficient evidence from which a reasonable fact-finder might have found the defendant guilty beyond a reasonable doubt. *Crawford,* 68 S.W.3d at 408. "The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime." *State v. Howell,* 143 S.W.3d 747, 752 (Mo.App.2004). In reviewing the evidence, we accept as true all evidence and inferences favorable to the State; all contrary evidence and inferences are disregarded. *Crawford,* 68 S.W.3d at 407–08; *Howell,* 143 S.W.3d at 752.

■■■■ The evidence presented at trial consisted principally of oral testimony from the State's witnesses and Defendant describing, from each witness' perspective, what had occurred. "Witness testimony is for a trial court to consider as the trier of fact." *Lauer,* 955 S.W.2d at 25. It is the trial court's prerogative to decide whether to believe all, part or none of a witness' testimony. *Id.* "An appellate court will not determine the credibility of witness testimony." *Id.*

---

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

2. All references to rules are to the Missouri Court Rules (2005).

■ Finally, it is important to note that Defendant initially filed a motion for judgment of acquittal at the close of the State's case. After the State rested, Defendant testified on his own behalf. At the close of all of the evidence, Defendant filed another motion for judgment of acquittal. "When a defendant introduces evidence on his own behalf, after the overruling of his motion for judgment of acquittal at the close of the State's case, the sufficiency of the evidence must be determined upon the entire record considering any incriminating evidence developed during the defendant's case." *State v. Rivers*, 554 S.W.2d 548, 550 (Mo.App.1977); *see State v. Parcel*, 546 S.W.2d 571, 573 (Mo.App.1977). Therefore, as we review the sufficiency of the evidence to support Defendant's conviction, we will consider any evidence favorable to the State that was elicited during the Defendant's testimony. *See State v. Sanderson*, 169 S.W.3d 158, 160–61 (Mo. App.2005). The following summary of the evidence has been prepared in accordance with these principles.

## II. Summary of the Favorable Evidence Supporting Defendant's Conviction

On April 1, 2003, Victim was driving her 2002 Dodge Neon north on Highway 65 toward Highlandville. At that location, Highway 65 consists of two northbound lanes and two southbound lanes divided by a grassy median. Victim, who had just turned 18 years of age, was a senior at Spokane High School. She was accompanied by her 19–year–old brother, Josh Cook ("Cook"), who was sitting in the Neon's front passenger seat.

As Victim approached the crest of a hill, she was driving in the passing lane in order to go around a tractor-trailer. The Neon was traveling at approximately 70 miles per hour. Defendant was driving an older-model gold Mercedes some distance behind Victim. The Mercedes was traveling approximately 90 miles per hour. Victim saw the Mercedes coming up behind her at such a high rate of speed that she thought her car was going to be struck in the rear. As the Neon headed down the hill, the tractor-trailer picked up speed. This prevented Victim from being able to complete her passing maneuver, even though she had sped up to about 75 miles per hour. Defendant, who was then about one car length behind the Neon, tried to pass Victim by going around her on the left-hand shoulder beside the passing lane. The right front end of the Mercedes was next to the left rear corner of the Neon. Defendant remained there for five or six seconds until it became apparent that he would not be able to get around Victim's car because the shoulder was only a few feet wide. Victim slowed down to see if the tractor-trailer unit would go past her, but it kept pace with her. At that point, Victim increased her speed to about 85 miles per hour in order to get around the tractor-trailer. When Victim was about one car length ahead of the tractor-trailer, Defendant swerved into the right-hand driving lane in front of the tractor-trailer. By doing so, Defendant prevented Victim from moving over into the driving lane.

Cook, who was watching Defendant's vehicle, saw Defendant throw his hands up in the air and make an obscene gesture with his middle finger. Defendant swerved his vehicle towards the Neon, which was still traveling at 85 miles per hour, and nearly hit it. Cook saw Defendant move off a short distance and then "intentionally swerve and hit us, and hit our car, and made us go off the road into the median." The collision was so hard that it moved Victim's whole car and jerked it toward the median. At that location, the median was only about 20–25 feet wide. It sloped downhill, and there were a number of dips

and rocks in it. Victim slammed on her brakes and finally came to a stop in the median. The Neon had sustained a significant impact to its right-front fender in the area ahead of the passenger door. This collision damage cost $2,331.76 to repair.

Once the Neon came to rest in the median, Victim called 911. Defendant stopped his car on the inside shoulder next to the median some distance ahead of the Neon. Defendant got out of his vehicle and approached Victim's car. He was "very angry." While Victim was on the telephone with the 911 operator, Defendant banged on her window and said, "You're going to be in trouble, Little Girl." Victim opened her door and had one leg out of the car, but Cook and the 911 operator warned her not to get out. Once Victim put her leg back in the Neon, Defendant slammed the door shut. When Defendant was told that police were on their way, he stood outside Victim's door for a moment and then walked off.

When Missouri State Highway Patrol Trooper Shane Rowe ("Trooper Rowe") arrived at the scene, he found Defendant sitting in the Mercedes with a Leatherman-type combination tool in his hand. Because this tool contained a knife blade, Trooper Rowe asked Defendant to put it down. Defendant declined to do so, and the trooper testified that "[w]e had to talk about that for a little bit before he'd finally put it down." Defendant said he was traveling 90 miles per hour on Highway 65 when a car in the passing lane impeded him from going on up the road. He tried to pass on the inside shoulder, but that didn't work. When the car did not get out of the way fast enough, he wanted to talk to the driver about it. When she wouldn't pull over, "he rammed her off the road." After making these statements, Defendant was arrested.

Victim sustained injuries to her lower back and neck in the collision. Although she did not require medical attention, both parts of her body have continued to ache and hurt since the date of the accident. These injuries were sufficiently painful that Cook noticed Victim's discomfort after the collision.

The foregoing facts were elicited by the State in its case-in-chief. Defendant was the only witness who testified on his behalf. During his direct examination, he disclosed that he had previously forced another car off the road in order to get two of his sons out of the vehicle because they were in the company of a "dopehead." Defendant also admitted that he pulled over a motorcyclist who gestured at him while passing because "I will stop somebody like that." Defendant believed that it was his responsibility as a citizen to do so. On cross-examination, Defendant admitted that when he moved his vehicle over into the passing lane toward Victim's car, it was his intention to try and force the Neon off the road.

After hearing all of the evidence, the trial court found Defendant guilty of assault in the second degree. The trial court then made the following comment:

> Gentlemen, before we adjourn here today, I want to talk about bond, and bond conditions, and I—based upon the evidence that I've heard, and primarily based upon the statements that have come out of [Defendant's] mouth ..., I'm most concerned about him continuing to operate a motor vehicle, and engaging in his form of vigilante justice. If I understood him correctly, he's done this at least three times, and this is dangerous, hazardous activity, and I feel compelled to take steps to prevent future occurrences of this sort of vigilante justice.

Therefore, the court continued Defendant on bond pending sentencing, but the conditions were modified to require that Defendant surrender his driver's license and agree not to operate a motor vehicle.

In the court's judgment, it imposed a sentence of three years in prison, but execution of the sentence was suspended. In lieu of an extended term of imprisonment, the court ordered that Defendant be placed on probation for five years, serve seven days shock time in the county jail, forfeit his right to drive an automobile and make restitution to Victim for the damage to her vehicle. This appeal followed.

### III. Discussion and Decision

Defendant was charged with committing second degree assault by violating § 565.060.1(2). This subdivision of the statute states: "A person commits the crime of assault in the second degree if he: ... (2) Attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument...." For present purposes, the three elements of this crime are: (1) attempting to cause or knowingly causing; (2) physical injury to another person; (3) by means of a dangerous instrument. The question presented by Defendant's appeal is whether the evidence is sufficient to support his conviction.

The trial court's findings as to elements two and three—that Victim sustained physical injury and that such injury was inflicted by means of a dangerous instrument—are amply supported by the evidence. Physical injury is disjunctively defined to mean "physical pain, illness, or any impairment of physical condition[.]" § 556.061(20).[3] The testimony from Victim and her brother about the pain and discomfort Victim sustained because of the collision is sufficient to constitute physical injury within the meaning of § 565.060.1(2). *See State v. Cole*, 148 S.W.3d 896, 902 (Mo.App.2004); *State v. Barnes*, 980 S.W.2d 314, 319 (Mo.App. 1998). A dangerous instrument is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" § 556.061(9). Under the circumstances present here, Defendant's car was a dangerous instrument within the meaning of this statute. *See State v. Williams*, 126 S.W.3d 377, 385–86 (Mo. banc 2004) (a car can be a dangerous instrument when it is used to run into a pedestrian); *Cole*, 148 S.W.3d at 901 n. 9 (a truck can be a dangerous instrument when it is used to ram another vehicle).

The only argument Defendant has chosen to pursue on appeal is whether the "intent" portion of the first element was sufficiently proven. This element focuses on whether a person "attempts to cause or knowingly causes" physical injury by means of a deadly weapon or dangerous instrument. The culpable mental state required for conviction of second degree assault pursuant to § 565.060.1(2) is "knowingly," whether physical injury is merely attempted or actually accomplished. *State v. Blackburn*, 168 S.W.3d 571, 576 (Mo. App.2005) (interpreting § 565.073.1(1), which defines the crime of domestic assault in the second degree, in the same way); *see also State v. Thomas*, 972 S.W.2d 309, 312–13 (Mo.App.1998) (since § 565.050 specifies that the crime of first degree assault can be committed by attempting to kill, knowingly causing or attempting to cause serious physical injury to another person, the culpable mental state of "knowingly" applies to all three

---

**3.** All references to § 556.061 are to RSMo Cum.Supp. (2004).

ways of committing this offense). Section 562.016.3 states:

A person "acts knowingly", or with knowledge,

(1) With respect to his conduct or to attendant circumstances when he is aware of the nature of his conduct or that those circumstances exist; or

(2) With respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result.

In the case at bar, there was sufficient evidence to support a finding that Victim did sustain physical injury in the collision. Thus, the determinative issue on appeal is whether Defendant "knowingly" caused Victim's physical injury.

Defendant argues the evidence as to intent was deficient because: (1) there was no direct evidence that he intended to physically harm Victim; and (2) the only inference that could be drawn from the surrounding circumstances is that Defendant wanted to stop Victim in order to lecture her about her driving. We consider each prong of the argument in turn.

■■■ Defendant's first argument focuses on the absence of direct evidence that he intended to harm Victim. In our view, such an admission by Defendant is not required in order to uphold his conviction for second degree assault. Because direct evidence of a defendant's intent is rarely available, intent to cause physical injury is most often proven by circumstantial evidence. *State v. Stiegler*, 129 S.W.3d 1, 4 (Mo.App.2003); *State v. Mann*, 129 S.W.3d 462, 466 (Mo.App.2004); *State v. Burton*, 863 S.W.2d 16, 17 (Mo.App.1993). Furthermore, "[a] defendant's mental state may be reasonably inferred from the act itself." *State v. Theus*, 967 S.W.2d 234, 239 (Mo.App.1998). "[I]t will be presumed that a person intends the natural and probable consequences of his acts." *State v. O'Brien*, 857 S.W.2d 212, 218 (Mo. banc 1993).

■■■ During Defendant's testimony, he admitted that it was his intention to force the Neon off the road with his own vehicle. The State's evidence tended to prove that just before Defendant did so, he exhibited signs of frustration and rage at not being able to pass Victim's vehicle. When Defendant rammed the Neon, that car was being driven by a young driver at 85 miles per hour. The impact between the vehicles was substantial enough to cause over $2,300 in damage to Victim's car. Her vehicle was forced off the road at an incredibly high rate of speed into a grassy, narrow median that sloped downhill and was filled with dips and rocks. Victim was injured by Defendant's conduct. Immediately after the collision, Defendant continued to behave in an angry and agitated fashion during his interactions with Victim and Trooper Rowe. We hold that this evidence was sufficient to support a finding by the trial court that Defendant acted "knowingly" because Defendant was aware of the nature of his conduct, and his actions were practically certain to cause physical injury to Victim. *See* § 562.016.3(2); *State v. Smith*, 891 S.W.2d 461, 466 (Mo.App.1994); *State v. Dunlap*, 639 S.W.2d 201, 206 (Mo.App.1982). The first prong of Defendant's argument has no merit.

Defendant's second argument focuses on the permissible inferences that could be drawn from the circumstantial evidence in this case. As noted in our factual summary, Defendant told officers at the scene that he ran Victim's car off the road so he could lecture her about her driving. He offered the same explanation for his behavior during his trial testimony. Relying on this evidence, Defendant contends the trial court could only have reasonably inferred that Defendant intended to stop Victim so he could talk to her. We disagree. For the reasons discussed above,

Defendant's admission that he intentionally rammed Victim's car and forced it off the road, under circumstances in which such conduct was practically certain to cause some physical injury, was sufficient to support the trial court's finding that Defendant did intend to harm Victim. Defendant's contrary explanation for his actions merely presented a fact question for the trial court to decide. It was up to the judge to assess the believability and weight to be given to Defendant's testimony in light of the facts, circumstances and other evidence in the case. *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). The trial court was not required to, and evidently did not, believe Defendant's self-serving and, quite frankly, bizarre explanation for running Victim's car off the road. The facts and circumstances of the incident, coupled with the other evidence presented, was sufficient to support a reasonable inference by the trial court that Defendant's *conduct* demonstrated an intent to cause physical injury to Victim. Defendant's argument amounts to nothing more than a complaint that his testimony should have been believed by the trial court. Such an argument presents no basis for relief by an appellate court because, in determining the sufficiency of the evidence to support a conviction, we must defer to the fact-finder's decisions about witness credibility. *State v. Styles,* 476 S.W.2d 591, 592–93 (Mo.1972); *State v. Dent,* 473 S.W.2d 370, 372–73 (Mo.1971); *State v. Cole,* 148 S.W.3d 896, 901 (Mo. App.2004).

Finally, we disagree with the assertion that the trial court based its decision about Defendant's intent to physically harm Victim, at least in part, on the evidence that Defendant had previously "pulled over" two other drivers. The reference to this evidence took place only *after* Defendant had been found guilty beyond a reasonable doubt and related solely to the court's consideration of Defendant's request to remain free on bond until sentencing. The trial court acceded to Defendant's request, but only after modifying the bond conditions. It does not appear from the record that the trial court utilized this evidence for any other purpose than this. In any event, it was Defendant who injected the evidence concerning these prior events into the case via his own direct examination. We cannot fault the trial court for considering the disclosure of these prior incidents in deciding whether it was necessary to modify the conditions of Defendant's bond pending sentencing.

Because the record contains sufficient evidence to support Defendant's conviction for assault in the second degree, we deny his point on appeal. Accordingly, the trial court's judgment is affirmed.

SHRUM, P.J., and GARRISON, J., Concur.