STATE of Missouri, Plaintiff–
Respondent,

v.

Joseph MORTON, Defendant–
Appellant.

No. 27990.

Missouri Court of Appeals,
Southern District,
Division Two.

July 17, 2007.

Jason Coatney of Springfield, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert Jefferson Bartholomew Jr., Asst. Atty. Gen. of Jefferson City, MO, for Respondent.

JEFFREY W. BATES, Chief Judge.

In May 2003, Joseph Morton (Defendant) was charged by information with committing the class B felony of child molestation in the first degree. *See* § 566.067.1 RSMo (2000). A person commits the crime of child molestation in the first degree "if he or she subjects another person who is less than fourteen years of age to sexual contact." Id. The phrase, "sexual contact," is separately defined as "any touching of another person with the genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]" § 566.010(3) RSMo Cum.Supp. (2002). The information alleged that Defendant subjected A.B., who was less than 14 years old, to sexual contact by rubbing her leg with his penis. After a bench trial, Defendant was found guilty and sentenced to serve five years in prison. On appeal, Defendant challenges the sufficiency of the evidence to support his conviction. We affirm.

■ In a court-tried criminal case, the court's findings have the force and effect of a jury verdict. Rule 27.01(b); *State v. Crawford,* 68 S.W.3d 406, 408 (Mo. banc 2002). "Therefore, the standard used to review the sufficiency of the evidence in a court-tried and a jury-tried criminal case is the same." *State v. Fraga,* 189 S.W.3d 585, 586 (Mo.App.2006). "The State may prove its case by presenting either direct or circumstantial evidence connecting the defendant to each element of the crime." *State v. Howell,* 143 S.W.3d 747, 752 (Mo. App.2004). Our role is limited to determining whether there was sufficient evidence from which a reasonable fact-finder

could have found that the defendant was guilty beyond a reasonable doubt. *State v. Mitchell*, 77 S.W.3d 637, 640 (Mo.App. 2002). We accept as true the evidence and reasonable inferences derived therefrom that are favorable to the judgment. *State v. McQuary*, 173 S.W.3d 663, 667 (Mo.App. 2005). We disregard all unfavorable evidence and inferences. Id. Viewed in that light, the following facts were adduced at trial.

Defendant and his mother, Shirley Morton (Mrs. Morton), lived together on Grace Street in Springfield, Missouri. In 2000, A.B. lived next door with her father, D.B., and a younger sister, N.B. A.B.'s parents were divorced, and her mother, R.B., resided elsewhere. Both D.B. and R.B. were friends of Defendant, who was then 38 years old. He frequently bought presents for A.B. and N.B. He also referred to A.B. as "his girlfriend" and said he wanted to marry her when she grew up. At some point not disclosed by the record, A.B. moved with her father and sister to a different home about 10 blocks from Defendant's residence.

On September 14, 2002, Defendant had a conversation with D.B. Defendant said Mrs. Morton missed the girls and wanted to know if they could spend the night, but she could only handle one child at a time. Defendant chose A.B. as the child who would get to spend the night. She was then nine years old and had never previously spent the night at Defendant's residence.

Defendant and Mrs. Morton lived in a two-bedroom house. The living room and kitchen were connected. Defendant's bedroom adjoined the living room; Mrs. Morton's bedroom adjoined the kitchen. When A.B. arrived, she and Defendant watched a movie in his bedroom. They sat next to one another on his bed. When the movie ended, A.B. prepared to go to bed. She had brought a nightgown with her, but Defendant wanted her to wear one of his t-shirts instead. A.B. went into the bathroom and put on the t-shirt. Underneath it, she was wearing a bra and panties. The t-shirt went to A.B.'s mid-thigh area. She returned to Defendant's bedroom and got on his bed. Defendant turned out the lights, but A.B. could still see very well. Defendant stood beside the bed and stripped down to his underwear, which was all black and came up high on his hips. He got back in bed and was underneath a cover. A.B. was laying on top of the cover. Defendant put his arm around A.B. and asked her to remove her shirt. This request scared A.B., and she refused to comply. She asked to go into the living room so she could sleep on the couch. Defendant replied, "in a minute." A.B. asked a second time and received the same response. After a third request, Defendant let A.B. go into the living room. She laid down on the couch and got underneath a cover. There was plenty of light in the living room because Mrs. Morton had left the oven light in the kitchen illuminated.

A.B. fell asleep, but she woke up when Defendant entered the living room. Wearing only a shirt and underwear, he was crawling on his hands and knees toward the couch. He got under the cover with A.B., who was lying on her left side facing the back of the couch. Defendant was on his left side, facing A.B.'s back. Defendant began repeatedly rubbing his erect penis back and forth against A.B.'s right thigh below her t-shirt. There was skin-to-skin contact between her bare leg and Defendant's penis. Defendant had his right hand on A.B.'s stomach. Defendant told A.B. that he loved her and kissed her on the cheek. He tried to kiss her on the lips, but she was able to turn away and prevent him from doing so. Defendant rubbed his erect penis against A.B.'s thigh

for less than a minute and then returned to his room. A.B. remained awake the rest of the night because she was afraid Defendant would return and do something else. When A.B. returned home the next morning, she told her sister, N.B., what had happened. N.B. called her mother, R.B., and told her about it. After questioning A.B. about what had happened, R.B. reported the incident in a hotline call to the Division of Family Services. Thereafter, A.B. also explained what had happened to R.B.'s mother, L.E.

On October 10, 2002, child forensic examiner Kathy Bernet (Bernet) conducted a videotaped interview of A.B. in which she described what had transpired at Defendant's residence. On October 20, 2002, Defendant gave a videotaped statement to Springfield Police Officer Sandy Goss (Officer Goss). In this statement, Defendant admitted that: (1) his erect penis probably rubbed back and forth against A.B.'s leg; (2) he told A.B. that he loved her; (3) he kissed her on the cheek; (4) A.B. was not lying in the statement she had given; (5) Defendant's erect penis rubbed A.B.'s leg for less than a minute; (6) he needed counseling to control his urges; and (7) he was willing to see a therapist to correct what had happened.

▇ In Defendant's sole point, he contends there was insufficient evidence for a reasonable trier of fact to conclude that Defendant touched A.B. for the purpose of arousing or gratifying his sexual desire. We disagree.

▇ During the State's case-in-chief, testimony was adduced from Bernet, Officer Goss, A.B., N.B., R.B., D.B. and L.E. In addition, the videotaped statements of A.B. and Defendant were admitted in evidence.[1] During Defendant's case, he and Mrs. Morton testified. Citing *State v. Love*, 134 S.W.3d 719 (Mo.App.2004), Defendant argues that, in assessing the sufficiency of the evidence, this Court has the ability to determine the credibility of the witnesses who testified below. That is not our function. "Witness testimony is for a trial court to consider as the trier of fact." *State v. Lauer*, 955 S.W.2d 23, 25 (Mo.App. 1997). It is the trial court's prerogative to decide whether to believe all, part or none of a witness' testimony. *Id.* We give great deference to the trier of fact and do not sit as a super juror possessing the power to veto the result below. *State v. Maclin*, 113 S.W.3d 304, 306 (Mo.App.2003); *State v. Kimberley*, 103 S.W.3d 850, 857 (Mo. App.2003). We do not weigh the evidence, resolve evidentiary conflicts or decide the credibility of witnesses. *State v. Daniels*, 179 S.W.3d 273, 285 (Mo.App.2005); *State v. Silvey*, 980 S.W.2d 103, 106 (Mo.App. 1998).

Defendant's reliance on *Love* is misplaced because that case involved an extraordinary circumstance not present here. Love was charged with sexual misconduct based on his interactions with four children at a shopping mall where Love worked as a holiday Santa Clause. The conduct that led to charges against Love had been videotaped, and the tape was admitted in evidence as an exhibit at his trial. *Love*, 134 S.W.3d at 722. On appeal, that exhibit was filed with and reviewed by this Court. *Id.* Since the actual events giving rise to the charges against Love had been recorded, there was no need for this Court to defer to the trial court's assessment of what the tape revealed in determining the sufficiency of the evidence. *See id.; State v. McMeans*, 201

---

1. This Court has reviewed the videotaped statements of A.B. and Defendant. As required by the applicable standard of review, our factual summary includes all facts favorable to the trial court's judgment that were contained in these videotapes.

S.W.3d 117, 120 (Mo.App.2006) (also involving the molestation of a child by her babysitter that was captured on a surveillance videotape). The case at bar involves the much more ordinary situation in which the evidence concerning the relevant events was conveyed to the trial judge principally through the oral testimony of the above-mentioned witnesses and the videotaped statements of A.B. and Defendant. Accordingly, *Love* is distinguishable and does not support Defendant's argument. It was up to the trial court to decide whether there were any inconsistencies in A.B.'s testimony which affected her credibility, and we will not interfere with that decision on appeal. *State v. Mason*, 95 S.W.3d 206, 211 (Mo.App.2003).[2]

Next, Defendant argues the evidence was insufficient to prove that he had the required mental state to be convicted of the crime of child molestation. He does not dispute that his erect penis touched A.B.'s leg or that she was under 14 years of age when that occurred. Instead, he argues that this contact was an accidental, innocent touching, and no reasonable factfinder could have reached the conclusion that he did so for the purpose of arousing or satisfying his sexual desire. We find this argument unpersuasive.

■■■ "In assessing whether a touching is for the purpose of arousing or gratifying sexual desire rather than being an innocent touching, a fact-finder looks at the circumstances of the particular case." *State v. Love*, 134 S.W.3d 719, 723 (Mo. App.2004). Purpose is determined from an actor's mental state. *McMeans*, 201

S.W.3d at 121. "Direct evidence of a particular mental state is seldom available; therefore, proof of the mental state will usually rest on circumstantial evidence and permissible inferences." *State v. Jensen*, 184 S.W.3d 586, 589 (Mo.App.2006). Prior to this incident, Defendant referred to A.B. as his girlfriend and said he wanted to marry her when she grew up. It was Defendant who suggested the overnight visit and selected A.B. as the child to stay at his home. Defendant was the one who suggested that A.B. should wear one of his t-shirts instead of the nightgown she had brought with her. Defendant also asked A.B. to remove that shirt when she was wearing only a bra and panties underneath it. Defendant stripped down to his underwear in A.B.'s presence, got into the same bed with her and placed his arm around her. He initially resisted A.B.'s efforts to leave the bedroom and go into the living room to sleep on the couch. Later, Defendant crept into that room on his hands and knees and got on the couch and under the cover with A.B. At that time, he was wearing only a shirt and his underwear. Defendant was aroused, and he repeatedly rubbed his erect penis against A.B.'s thigh. There was skin-to-skin contact between Defendant's genitalia and A.B.'s leg. While this occurred, Defendant had his arm around A.B. and kissed her on the cheek every time she moved. Defendant also tried to kiss A.B. on the lips, and she had to turn her face away to prevent him from doing so. We hold that the circumstantial evidence and permissible inferences that could be drawn therefrom were

---

**2.** Our appellate courts have often noted that the testimony of young victims about sensitive and embarrassing subjects commonly contains some contradictions, variations or memory lapses. *See, e.g., Schaal v. State*, 179 S.W.3d 907, 919 (Mo.App.2005); *N.J.K. v. Juvenile Officer*, 139 S.W.3d 250, 256–57 (Mo. App.2004); *State v. Sprinkle*, 122 S.W.3d 652, 663 (Mo.App.2003); *State v. Mattic*, 84 S.W.3d 161, 169 (Mo.App.2002); *State v. Werneke*, 958 S.W.2d 314, 319 (Mo.App.1997). Moreover, A.B.'s account of what happened was largely corroborated by the admissions Defendant made to Officer Goss and by Defendant's own testimony.

sufficient to prove that Defendant's act of rubbing his erect penis against A.B.'s leg was for the purpose of arousing or gratifying Defendant's sexual desire.

The trial court chose not to believe Defendant's testimony that such touching occurred innocently and accidentally. His argument on appeal amounts to nothing more than a complaint that his testimony should have been believed by the trial court. Such an argument presents no basis for relief because, in determining the sufficiency of the evidence to support a conviction, an appellate court must defer to the fact-finder's decisions about witness credibility. *See State v. Styles,* 476 S.W.2d 591, 592–93 (Mo.1972); *State v. Dent,* 473 S.W.2d 370, 372–73 (Mo.1971); *State v. Cole,* 148 S.W.3d 896, 901 (Mo.App.2004).

The record before us contains sufficient evidence to support Defendant's conviction for child molestation in the first degree. Therefore, we deny his point on appeal and affirm the trial court's judgment.

GARRISON, and LYNCH, JJ., Concur.