

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| IN THE INTEREST OF T.P., | ) | No. ED110623 |
| | ) | |
| | ) | Appeal from the Circuit Court of |
| | ) | Jefferson County |
| | ) | 21JE-JU00493 |
| | ) | |
| | ) | Honorable Joseph A. Rathert |
| | ) | |
| | ) | Filed: May 9, 2023 |

Kelly C. Broniec, P.J., Philip M. Hess, J., and James M. Dowd, J.

### Introduction

On November 2, 2021, T.P., a thirteen-year-old boy attending Festus Middle School in Jefferson County, Missouri, showed to a classmate, M.D., a gun hidden in his backpack. T.P. told M.D. that the gun was real, and that T.P. would shoot him if he told anyone. The gun was a replica toy gun known as an airsoft gun, but M.D. did not know that it was not a firearm.[1]

T.P. was charged with first-degree harassment under section 565.090.[2] The Juvenile Division of the Circuit Court of Jefferson County found that T.P. violated that statute and therefore adjudicated him delinquent. In its disposition, the court placed him on probation,

---

[1] Section 571.010(8) defines "firearm" as "any weapon that is designed or adapted to expel a projectile by the action of an explosive."

[2] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise stated.

directed him to participate in counseling, and to complete a program at the New Day Treatment Center. T.P.'s appeal asserts that the court erred in finding him delinquent because there was not sufficient evidence that he committed first-degree harassment. We disagree and affirm.

## Factual Background

On November 23, 2021, the Juvenile Officer filed the petition alleging that T.P. was delinquent for committing first-degree harassment pursuant to section 565.090. The petition alleged that on November 2, 2021, T.P. showed a handgun to his classmate, M.D., threatened M.D. with the purpose of causing him emotional distress, and thereby caused M.D. to suffer emotional distress. T.P. denied the allegations at an adjudication hearing on April 28, 2022.

M.D. testified at the hearing that when he walked into his first-period classroom on November 2, 2021, T.P. was sitting at a desk and no one else was in the room. T.P. invited M.D. over to his desk and told him to look in his backpack. M.D. did so and saw a gun. He testified he could see only the handle of the gun, but T.P. told him the gun was real, which M.D. believed. The gun was not a firearm but a replica toy gun known as an airsoft gun. On cross-examination, M.D. testified that he owned an airsoft gun similar to T.P.'s.

T.P. told M.D. that he would shoot him if he told anyone. M.D., however, reported the incident to his parents and to law enforcement that same day. M.D. testified that he believed T.P. would shoot him and he felt scared to be at school that day. M.D. stated that he still thought about the incident sometimes, but he was no longer scared to go to school because he knew that T.P. no longer attended the school.

The school principal, Jacob Munoz, testified that on November 2, 2021, his assistant principal informed him that a student had reported that T.P. had a weapon in his backpack. Munoz brought T.P. to his office and asked T.P. if he had anything in his possession that he

should not have.  T.P. said no.  T.P. consented to Munoz searching the backpack whereupon he found what appeared to be a black pistol.  Munoz testified that he knew the weapon was a toy when he picked it up.  Two days later, Munoz spoke with M.D., who told him that he did not know whether the gun was real or fake.

Officer Jaymes Brookshire, a patrolman with the Festus Police Department and a school resource officer at Festus Middle School, also testified at the hearing.  He testified that the gun shown to him at the hearing was in the same condition as when he took possession of it at the school that day except it now had a visible orange tip.  According to Officer Brookshire, an orange tip on the end of the muzzle normally indicates the gun is not real, but the orange tip is only visible when the slide on the gun is pulled back.  He testified that the orange tip was not visible on this gun when he took possession of it after T.P. had showed it to M.D.

At the close of the state's evidence, T.P. moved for an acquittal and requested that the case be dismissed because the Juvenile Officer failed to make a submissible case.  The court denied the motion.  T.P. did not present any evidence at the hearing.  The court held that the Juvenile Officer proved beyond a reasonable doubt that T.P. committed harassment in the first degree.  The court placed T.P. on probation and directed him to complete a program at New Day Treatment Center and to participate in counseling.

This appeal follows.

## Standard of Review

"Juvenile proceedings are reviewed as in the same manner as court-tried cases." *D.C.M. v. Pemiscot Cty. Juvenile Office*, 578 S.W.3d 776, 786 (Mo. banc 2019).  Therefore, this Court will affirm the circuit court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law.  *Interest of*

*D.E.W.*, 617 S.W.3d 514, 519 (Mo. App. E.D. 2021). "[I]n juvenile proceedings, 'due process requires the standard of proof to be beyond a reasonable doubt in the adjudicatory stage when a juvenile is charged with an act that would constitute a crime if committed by an adult.'" *C.G.M., II v. Juvenile Officer*, 258 S.W.3d 879, 882 (Mo. App. W.D. 2008) (quoting *In the Interest of J.L.P.*, 600 S.W.2d 47, 50 (Mo. App. E.D. 1980)).

When reviewing a sufficiency of the evidence challenge, we determine whether there was sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt, regardless of whether the case was tried by a jury or the court. *Interest of D.E.W.*, 617 S.W.3d at 519. We view the evidence and its reasonable inferences in the light most favorable to the verdict and ignore all evidence and inferences to the contrary. *J.N.C.B. v. Juvenile Officer*, 403 S.W.3d 120, 124 (Mo. App. W.D. 2013). "'The credibility of witnesses and the weight to be given their testimony is a matter for the trial court, which is free to believe none, part, or all of their testimony.'" *C.L.B. v. Juvenile Officer*, 22 S.W.3d 233, 236 (Mo. App. W.D. 2000) (quoting *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988)).

## Discussion

In his first and only point on appeal, T.P. asserts that the circuit court erred in finding that there was sufficient evidence that he was delinquent by committing the crime of harassment in the first degree. T.P. specifically argues that the evidence failed to establish he acted purposely to cause immediate and substantial emotional injury to a reasonable person. He also claims his right to be free from double jeopardy precludes a second adjudication hearing on this charge.[3]

"A person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person,

---

[3] In light of our disposition herein, we need not address this claim.

and such act does cause such person to suffer emotional distress." Section 565.090.1. "A person 'acts purposely,' or with purpose, with respect to his or her conduct or to a result thereof when it is his or her conscious object to engage in that conduct or to cause that result." Section 562.016.2. "An actor's mental state will often rest on circumstantial evidence and permissible inferences." *In re J.A.H.*, 293 S.W.3d 116, 120 (Mo. App. E.D. 2009) (citing *State v. Morton*, 229 S.W.3d 626, 630 (Mo. App. S.D. 2007)).

Emotional distress is "something markedly greater than the level of uneasiness, nervousness, unhappiness, or the like which are commonly experienced in day-to-day living." Section 565.002(7). "And that emotional distress must be considerable or substantial to a reasonable person." *R.M. v. Juvenile Officer*, 625 S.W.3d 779, 783 (Mo. App. W.D. 2021).

Accordingly, the Juvenile Officer's burden here was to establish (1) that T.P., by showing M.D. the gun and threatening to shoot him if he told anyone, engaged in conduct with the purpose of causing M.D. emotional distress, and (2) that T.P. in fact caused M.D. to suffer emotional distress. We find that the record readily satisfies the Juvenile Officer's burden here.

T.P. invited M.D. to his desk when they were alone in the classroom. He invited M.D. to look into the backpack and after M.D. saw the gun, albeit just the handle of it, assured M.D. that the gun was real. And M.D. believed it was real. T.P. displayed the gun in a manner that did not expose the orange tip that might have revealed that it was a replica toy gun. T.P. then told M.D. that he would shoot him if he told anyone that he had it. Thus, the court could reasonably infer that based on all of T.P.'s actions and statements, T.P. acted with the purpose of causing M.D. emotional distress.

In *D.C.M. v. Pemiscot County Juvenile Office*, 578 S.W.3d 776, 786-87 (Mo. banc 2019), D.C.M. was accused of making a terrorist threat in the second degree which required that he

knowingly communicated an express or implied threat to cause an incident or condition involving danger to life. A person acts knowingly when he or she is aware of the nature of his or her conduct. *Id.* at 786. Two witnesses testified that D.C.M. stated he felt like blowing up the school and was "going to do it tomorrow." *Id.* at 787. The court considered this a clear, declaratory statement indicating his intent to blow up the school that was sufficient evidence to find D.C.M. delinquent. *Id.* Like D.C.M., T.P. made a clear, declaratory statement that he would shoot M.D. if he told anyone about the gun. Although the *mens rea* here is different (knowingly versus purposely), T.P.'s threatening statement that he would shoot M.D., in conjunction with his actions, indicated that he purposely meant to scare M.D. and cause him emotional distress.[4]

Moreover, there was sufficient evidence that T.P. caused M.D. emotional distress. In *State v. Frye*, 566 S.W.3d 658, 666 (Mo. App. W.D. 2019), the court held that there was sufficient evidence that the victim suffered emotional distress because she testified that she felt "weirded out" and "uncomfortable" by the defendant's behavior. She also testified that she felt "creeped out" and scared. *Id.* Here, M.D. testified that he believed the gun was real and that T.P. would shoot him. He further testified that he was scared and afraid to be at school that day due to T.P.'s threat. He had attended Festus schools since kindergarten and was never afraid to be at school until this incident. He also reported the incident to law enforcement and his parents,

---

[4] T.P. also argues that there was not sufficient evidence that he acted purposely considering his age, capacity, and experience. T.P. was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), did poorly in school, and had a troubled home life. While this child-specific analysis may be applicable to cases when the issue is whether a juvenile defendant acts knowingly, *I.D. v. Juvenile Officer*, 611 S.W.3d 869, 876 (Mo. App. W.D. 2020), T.P. fails to direct us to any case that requires consideration of his age, capacity, and experience when the issue is whether a juvenile defendant acts purposely. Nevertheless, T.P. has failed to demonstrate that the juvenile division here failed to take into consideration those factors while it considered T.P. at the delinquency and dispositional phases of this case.

which demonstrates that he believed the gun was real and that T.P.'s threat was serious. Therefore, viewing the evidence and its reasonable inferences in the light most favorable to the verdict, and disregarding evidence to the contrary, we find M.D.'s testimony that he was scared sufficient to show that T.P. caused M.D. emotional distress.

T.P. maintains that M.D. could not suffer emotional distress because he did not know whether the gun was real or fake and because M.D. owned a similar air soft gun. However, our standard of review disposes of this claim because it is directly refuted by M.D.'s testimony that he believed the gun was real, which the trial court found to be credible. Moreover, the evidence was that M.D. only saw part of the gun and did not see the orange tip on the muzzle, the telltale feature of replica toy guns. Lastly, unlike the school principal, who immediately realized the gun was fake when he picked it up, M.D. did not handle the gun.

T.P. also argues that M.D. did not suffer emotional distress because he did not cry or have trouble sleeping, he did not ask to go to the school's office or leave class, and he was not afraid to go to school after the incident. Despite this, we defer to the trial court's finding that M.D.'s testimony that he was scared was sufficient to show that T.P. caused M.D. emotional distress.

### Conclusion

For the reasons set forth above, we affirm.

_____
James M. Dowd, Judge

Kelly C. Broniec, P.J., and
Philip M. Hess, J. concur.