**STATE of Missouri, Respondent,**

v.

**Emmett R. McDONALD, Appellant.**

No. 22742.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 9, 1999.

Motion for Rehearing and Transfer to
Supreme Court Denied Dec. 28, 1999.

Application for Transfer Denied
Feb. 22, 2000.

Gary E. Brotherton, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Presiding Judge.

Appellant, charged with trafficking drugs in the second degree, waived trial by jury. The trial court, after hearing evidence on a motion to suppress filed by Appellant, denied the motion. Later, without further evidence, the trial court entered judgment declaring Appellant guilty of the offense charged and imposing a ten-year prison sentence.[1]

Appellant brings this appeal from that judgment. His sole point relied on reads:

"The trial court erred in entering judgment and sentence against Emmett for second degree drug trafficking because such rulings deprived Emmett of due process of law. *See* U.S. Const., Amends. V and XIV; Mo. Const., Art. I, § 10. The trial court did not find that the State proved beyond a reasonable doubt that Emmett committed a punishable offense. First, the court merely concluded that overruling Emmett's motion to suppress evidence 'had the practical effect of then resulting in a conviction' for second degree drug trafficking. Second, it is impossible to discern whether the court found Emmett guilty of a punishable offense since the information improperly alleged that Emmett could be guilty if he knew or *consciously disregarded a substantial and unjustifiable risk* that the compound was a controlled substance—the latter not being an element of second degree drug trafficking."

Inasmuch as Appellant's point relied on refers to him as "Emmett," this opinion, to avoid confusion, shall use that designation.

On January 26, 1993, Carl L. Hicks, a special agent of the Drug Enforcement Administration, arrested Emmett on a Greyhound bus in Springfield after discovering "[s]ix kilograms of cocaine" in a bag beneath the seat Emmett was occupying.

The prosecutor charged Emmett with violating § 195.223.2(2), RSMo Cum.Supp. 1992. The information alleged that Emmett:

" ... possessed, had under his control, and brought in to [sic] the State of Missouri 450 grams or more of a compound, mixture or preperation [sic] containing a detectable amount of cocaine salts or their optical and geometric isomers and salts of isomers, knowing or conciously [sic] disregarding a substantial and unjustifiable risk that the compound, mixture or preparation contained the aforementioned controlled substance."

Emmett, through retained counsel, filed a "Motion to Quash the Defendants [sic] Arrest and Suppress Evidence." The motion averred Emmett's arrest and the seizure of the cocaine violated sundry rights conferred by the Constitution of the United States and the Constitution of Missouri.

On March 24, 1995, the trial court conducted a hearing on the motion.[2] Emmett appeared in person with two lawyers.[3] One of them announced:

"[W]e would like for the Court to consider this as a trial and motion to suppress since the only real issue is whether there ... is a suppressible issue in this case."

Emmett's other lawyer said:

"We would expect ... the Court's ruling on this motion to be outcome determinative. And should the Court sup-

---

1. The judgment, entered almost 45 months after the suppression hearing, states Appellant was "adjudged guilty upon his plea of guilty." That is wrong. However, Appellant raises no issue about the mistake in this appeal.

2. An alert reader will realize 26 months passed between Emmett's arrest and the sup-

pression hearing. Emmett raises no issue about the delay, hence the reasons for it need not be recounted.

3. Neither of them represents Emmett in this appeal.

press the evidence, then that would take care of our situation. And should the Court choose not to, then we would like to position ourselves to go to the Court of Appeals."

The trial court articulated its understanding of counsels' proposal thus:

"[W]e're going to take testimony here today and I'm going to first utilize that testimony to rule the motion to suppress. If I overrule the motion to suppress, then everybody agrees that I can use that same testimony to make a finding and actually rule the case as a non-jury court-tried case."

One of Emmett's lawyers replied: "That's the way I'd like to go, sir."

The trial court thereupon permitted Emmett to waive trial by jury per Rule 27.01(b), Missouri Rules of Criminal Procedure (1995), and heard evidence on the motion to suppress. The facts set forth in the ensuing twelve paragraphs are gleaned from that evidence.

1. On January 26, 1993, a Greyhound bus en route from Los Angeles to St. Louis stopped in Springfield for a "lunch break." Agent Hicks and detective Dana Carrington of the Springfield Police Department were awaiting it. When it stopped, Hicks and Carrington "watched [some of] the passengers get off ... to see if there were any passengers that [they] wanted to ... interview."

2. After those passengers exited, Hicks and Carrington boarded the bus. Hicks talked to a couple of passengers at the front, while Carrington walked to the back and began talking to passengers there. Emmett, one of the passengers who had remained on the bus, was seated "about halfway back." Hicks noticed Emmett was "intently watching the interviews."

3. Hicks approached Emmett and "had a conversation with him." Emmett said he boarded the bus in Hollywood and was returning to his home in Dayton, Ohio. However, when Hicks asked to see Emmett's ticket, Emmett produced one showing he boarded at El Monte, California. Hicks, formerly assigned to the Los Angeles area, was aware that "narcotics traffickers" in the Los Angeles area board eastbound buses in El Monte (ten miles east of Los Angeles) so "they don't have to go through the main bus station in downtown Los Angeles."

4. Describing Emmett's demeanor, Hicks stated:

"[His] hands were shaking, trembling. His voice was breaking. He was breathing very rapidly and I could hardly understand him."

5. As the conversation progressed, Hicks noticed "a green travel bag" beneath the seat occupied by Emmett. The bag "had a shirt draped over it and ... through the handles." Carrington asked Emmett who the bag "belonged to."

6. Emmett replied it did not belong to him and he "did not know who it belonged to."

7. Hicks found Emmett's reply unusual, as Emmett "had his shoes off at that time and his shoes were propped up on the end of the bag." Hicks picked up the bag, placed it on the seat next to Emmett, and asked Emmett if he (Hicks) could search it for drugs. Hicks told Emmett that if the bag belonged to him, he did not have to consent to the search.

8. According to Hicks, Emmett said, "I don't want you to search the bag."

9. Hicks found that reply unusual because Emmett had already denied ownership of the bag and said he did not know who it belonged to. Hicks thereupon told Emmett he would be "briefly detained" because the officers "were going to summon the drug dog to examine the bag."

10. In response to that announcement, Emmett said: "It's not my bag. You can go ahead and search it." However, added Emmett, "I don't want you to search it while it's sitting in the seat next to me."

11. Hicks moved the bag from the seat to the aisle, opened it, and found the cocaine. Hicks thereupon arrested Emmett. Asked what occurred next, Hicks answered, "[Emmett] put his shoes on and grabbed his shirt off of the green travel bag, pulling it through the handles, and walked off the bus with ... Carrington."

12. Hicks then interviewed passengers seated near Emmett and learned Emmett "had the seat all to himself ... [n]o one was sitting next to him."

On June 28, 1996, the trial court denied the motion to suppress.[4]

The next pertinent activity of record is a docket entry October 26, 1998, stating, *inter alia:* "THE COURT FINDS DEFT GUILTY AS CHARGED. SENTENCING IS SET FOR 9:00 AM DECEMBER 18, 1998." [5]

On December 18, 1998, Emmett appeared in the trial court with appointed counsel. The trial court announced:

"This case was tried to the Court in conjunction with ... the motion to suppress ... some time back.... The motion to suppress was overruled, which had the practical effect then of resulting in a conviction."

After comments by Emmett, his lawyer, and the prosecutor regarding sentence, the trial court pronounced sentence as reported in the first paragraph of this opinion.

█ Emmett's point relied on (quoted earlier) makes two attacks on his conviction. The first is that the trial court never found the State proved Emmett guilty beyond a reasonable doubt, but instead concluded that the denial of the motion to suppress had the "practical effect" of a conviction.

In support of that premise, Emmett points out that to prevail on the suppres-

sion motion, the State "merely had to persuade [the trial court] by a preponderance of the evidence that [the] motion should be overruled," whereas to obtain a conviction, the State had to prove each element of the charged offense beyond a reasonable doubt. Continuing, Emmett maintains:

"It is clear from the record that [the trial court] did not hold the State to its burden of proof. [The court] simply ruled on the motion to suppress and opined that a conviction necessarily followed. Consequently, Emmett has been deprived of his liberty based upon much less than proof beyond a reasonable doubt. He was found guilty only by a preponderance of the evidence!"

Emmett's hypothesis, while ingenious, is unpersuasive.

█ First, trial judges are presumed to know the law and to apply it in making their decisions. *State v. Feltrop,* 803 S.W.2d 1, 15 (Mo. banc 1991), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991), citing *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 3057[4], 111 L.Ed.2d 511 (1990). Accordingly, this court presumes the trial court, in finding Emmett guilty as charged, was aware of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073[8], 25 L.Ed.2d 368 (1970), which holds the due process clause of the Fourteenth Amendment to the Constitution of the United States protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

Second, the trial court could have reasonably understood the comments of Emmett's lawyers at the suppression hearing (quoted earlier) as a concession that if the cocaine was not suppressed as evidence, a finding of guilty—by either a jury or the

---

4. That ruling came 15 months after the suppression hearing. As Emmett raises no issue about the delay, the reasons for it need not be recounted.

5. The docket entry came almost 28 months after the trial court denied the motion to suppress. No issue is raised in this appeal about the delay, hence the reasons for it are not enumerated.

trial court—was inevitable. That would be a reasonable assumption because Emmett, upon being arrested, took the shirt off the bag, an act manifesting ownership of both. That act, coupled with Hicks's testimony that Emmett "had the seat all to himself," is compelling evidence that the bag was Emmett's.

Consequently, the trial court could have reasonably concluded that Emmett (and his lawyers) recognized that if the motion to suppress was denied, Emmett's only chance of ultimately escaping a conviction would be to challenge that ruling on appeal. Consistent with that analysis, Emmett's lawyers asked the trial court to follow the procedure they outlined on March 24, 1995, in order to preserve Emmett's right to appellate review of an adverse ruling on the motion.

When the trial court denied the motion to suppress, the trial court obviously realized its ruling would result in Emmett's conviction, as (a) Emmett had waived trial by jury, and (b) the cocaine, coupled with the other evidence—all of which was uncontradicted—established Emmett's guilt beyond a reasonable doubt. The trial court's remark that the denial of the motion had the "practical effect" of a conviction was nothing more than a recognition of that reality.

For the two reasons set forth above, this court finds no merit in Emmett's hypothesis that the trial court applied the wrong burden of proof in adjudicating him guilty.

■ The second claim of error in Emmett's point relied on is that it is impossible to discern whether the trial court found him guilty of a punishable offense, as the information (quoted in pertinent part earlier) averred he knew *or* consciously disregarded a substantial and unjustifiable risk that the substance in the green bag was cocaine. Emmett argues:

> "[T]he mental state alleged in the information included recklessness. But second degree drug trafficking cannot be committed recklessly.... It must be

knowingly done, or it is not punishable under § 195.223."

Emmett correctly points out that in *State v. Carson*, 941 S.W.2d 518 (Mo. banc 1997)—decided after Emmett's arrest but before the trial court found him guilty—the Supreme Court of Missouri held that when a suspect is charged with trafficking drugs in the second degree in violation of § 195.223.2(2) by bringing drugs into Missouri, the prosecutor must prove the suspect knew or was aware that what he was bringing was a controlled substance. *Id.* at 520–22. That is, "knowledge must be the mental state for trafficking in the second degree." *Id.* at 523. Consequently, the trial court in *Carson* erred by giving a verdict-directing instruction hypothesizing that the accused knew *or* consciously disregarded a substantial and unjustifiable risk that the substance he brought into Missouri contained cocaine. *Id.* at 520–23.

The flaw in Emmett's second theory of error is the same as in his first. Inasmuch as (1) *Carson* was decided before the trial court found Emmett guilty, and (2) the trial court is presumed to know the law, *Feltrop*, 803 S.W.2d at 15, this court presumes the trial court was aware Emmett could be found guilty of trafficking drugs in the second degree only if Emmett knew the substance in the green bag was cocaine. This court therefore rejects Emmett's theory that the trial court "could have found that Emmett acted recklessly," as that hypothesis would require this court to disregard the presumption that the trial court knows the law.

Judgment affirmed.

PARRISH and SHRUM, JJ., concur.