**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jerome George POOLE, Defendant–Appellant.**

No. 27663.

Missouri Court of Appeals,
Southern District,
Division Two.

March 19, 2007.

Craig A. Johnston, of Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., and Karen L. Kramer, Assistant Attorney General, of Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Jerome George Poole ("Defendant") was charged by felony information with committing the class D felonies of driving while intoxicated, in violation of § 577.010, RSMo 2000, and driving while revoked, in violation of § 302.321, RSMo Cum.Supp. 2002. Defendant waived his right to a jury trial. Following a bench trial, the court found Defendant guilty on both counts and sentenced him as a prior and persistent offender to four years' imprisonment for each count, to be served concur-

rently. *See* §§ 577.023, RSMo Supp.2001; 558.011, RSMo Cum.Supp.2003; and 560.011, RSMo 2000. The court suspended execution of the prison sentence and placed Defendant on probation for five years, with the condition that he serve thirty days of shock detention in the Greene County Jail.[1] Defendant appeals, contending the trial court erred in admitting the expert rebuttal testimony of a police officer at trial and in applying the wrong burden of proof to convict Defendant. We affirm.

Defendant does not challenge the sufficiency of the evidence to support his convictions. Viewing the evidence in the light most favorable to the verdict, *State v. Woodmansee*, 203 S.W.3d 287, 289 (Mo. App.2006), the record reveals the following:

On January 20, 2005, at approximately two a.m., Defendant was pulled over by Corporal Daron Wilkins ("Officer Wilkins") of the Springfield Police Department. Defendant had been driving fifteen miles per hour over the speed limit, failed to use his turn signal when making a right turn, did not have a light illuminating the rear license plate of the vehicle, and stopped at an intersection about three feet over the crosswalk. After Defendant pulled over to the side of the street, he started to get out of the car, and Officer Wilkins told him to remain in the vehicle. Defendant said he did not have a driver's license and handed Officer Wilkins a Missouri identification card. Officer Wilkins smelled the odor of an intoxicating beverage coming from the vehicle and Defendant's person. Defendant's speech was slurred. He was acting very nervous, constantly reaching into his pockets and under his seat. Suspecting that Defendant was intoxicated, Officer Wilkins dispatched Sergeant Randall Latch ("Officer Latch") of the DWI enforcement team to the scene. Officer Wilkins checked on Defendant's driving record through the dispatch center and discovered that he was under a five-year denial[2] for issuance of a driver's license, had at least two prior convictions for driving while revoked, and two prior convictions, as well as two warrants for his arrest, for driving while intoxicated.

When Officer Latch arrived, he asked Defendant to get out of the vehicle. He could smell alcohol on Defendant's breath, and noticed his eyes were watery, and he had a glassy stare. His balance was unsteady, his speech was slurred, he stuttered and repeated himself a lot, and spit kept coming out of his mouth as he spoke. Defendant initially denied having anything to drink, but then admitted he had had one beer earlier in the evening. Officer Latch had Defendant move onto the sidewalk, where he administered three field sobriety tests: the horizontal gaze nystagmus ("HGN"),[3] the walk-and-turn, and the one-

---

1. Execution of this condition was suspended pending the outcome of this appeal.

2. *See* § 302.060(10), RSMo 2000.

3. "Nystagmus is an involuntary jerking of the eyes. Under the HGN test, an individual's eye movements are tested as a means of determining whether they are under the influence of alcohol. A suspect is required to follow an object such as a finger or pen with his eyes as the object is moved laterally along a horizontal plane to the periphery of the suspect's vision. [T]here are three separate indicators that an officer looks for under the HGN test. First, an officer observes how smoothly a suspect follows the object as it is moved to the periphery of the suspect's vision. Jerking of the eyes rather than the ability to follow the object smoothly indicates the influence of alcohol. Second, an officer observes whether or not a distinctive jerking occurs in the eyes at the maximum point of deviation when the eye moves to the far periphery of vision. Distinctive jerking is indicative of the influence of alcohol. Third, an officer observes the angle at which nystagmus occurs.

leg stand. During the HGN test, Officer Latch observed that Defendant's pupils were of equal size, and his eyes tracked equally, moving in sync with each other. However, his eyes did not have smooth pursuit, and both exhibited nystagmus at maximum deviation. Officer Latch could not determine the angle at which the nystagmus began. Defendant began the walk-and-turn test before Officer Latch had finished giving him instructions. He also did not touch heel-to-toe on all of his steps and had trouble turning. Defendant was swaying and unbalanced during all of the tests, holding his arms out to his sides for balance. Based on all of his observations of Defendant, and on Defendant's performance during the tests, Officer Latch believed Defendant was impaired by alcohol and arrested him. After he was taken to the jail, Defendant refused to take a breath analyzer test.

At the bench trial, Defendant testified that he is totally blind in his left eye as a result of a military accident. However, Defendant never told this to Officer Latch. Defendant demonstrated to the court that his eyes track equally; whenever his right eye moves, the left eye moves with it.

Officer Latch testified in rebuttal over Defendant's objection that, based on his training and experience with the HGN test, in his opinion blindness in one eye would not affect a person's performance on the test if there were no muscle injuries to the eyes. Even though the blind eye would not be able to focus, both eyes would still track together, as long as there was no damage to the muscles that connect the eyes together.

After trial, Defendant was convicted of driving while intoxicated (§ 577.010, RSMo 2000) and driving while revoked (§ 302.321, RSMo Cum.Supp.2002). This appeal followed.

Defendant's first point on appeal contends the trial court erred in admitting the rebuttal testimony of Officer Latch that in his opinion blindness in one eye would not affect a person's performance on the HGN test, because the state did not show that Officer Latch was qualified through knowledge and experience to give an expert opinion "about how blindness would affect the results of an HGN test."

■ A trial court has broad discretion in deciding whether to admit or exclude evidence at trial. *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006). We will reverse only when the trial court has clearly abused that discretion. *Id.* An abuse of discretion occurs when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* In addition, on appeal we review for prejudice, not mere error, and will reverse only if we find prejudice. *Id.* "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Murrell v. State*, 215 S.W.3d 96, 109–110 (Mo. banc 2007).

■ The trial court also has discretion in determining whether a witness qualifies as an expert. *State v. Crow*, 63 S.W.3d 270, 274–75 (Mo.App.2001). An expert is qualified if he has knowledge from education or experience that will aid the trier of fact. *State v. Partridge*, 122 S.W.3d 606, 609 (Mo.App.2003). "The ex-

Nystagmus occurring at or before the eye is looking at a 45–degree angle is indicative of the influence of alcohol."
*State v. Rose*, 86 S.W.3d 90, 96–97 (Mo.App. 2002) (quoting *State v. Hill*, 865 S.W.2d 702,

704 (Mo.App.1993), *overruled on other grounds by State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997)).

tent of an expert's experience or training in a particular field goes to the weight, not the admissibility, of the testimony." *Id.* Testimony should be allowed if the expert witness possesses "some qualification." *State v. Blakey,* 203 S.W.3d 806, 816 (Mo. App.2006). The trier of fact decides what probative value, if any, the testimony carries. *State v. Jackson,* 186 S.W.3d 873, 883 (Mo.App.2006).

■■■ In this case, Officer Latch has worked in law enforcement for twenty-five years, working sixteen of those years for the Springfield Police Department. At the time of this incident, he was the supervisor of the DWI unit. Prior to that, he supervised the crime lab for four years. He has received training in administering the three standardized field sobriety tests, with twelve hours of training in administering the HGN test specifically. He has made prior DWI arrests after administering the tests, and has testified in court on the subject of intoxication more than fifty times. Thus, he possessed some qualification to testify about HGN testing. The amount of his education in the particular field of HGN testing went to the weight of his testimony, not to its admissibility. *Partridge,* 122 S.W.3d at 609.

Defendant argues that Officer Latch's training does not qualify him to give a medical opinion as to how blindness affects the HGN test. However, any lack of medical training bears on the weight and credibility of Officer Latch's testimony, not its admissibility. *State v. Bradley,* 57 S.W.3d 335, 340 (Mo.App.2001). The court determined that it would be aided by Officer Latch's expert opinion, given his training and experience. We find no abuse of discretion in that determination. It was up to Defendant to modify, explain, or discredit

that opinion during cross-examination.[4] *State v. Maynard,* 954 S.W.2d 624, 633 (Mo.App.1997).

Defendant further contends that because Officer Latch's opinion depended upon the assumption that there was no muscle damage to the eyes, his testimony should have been excluded, because there was no evidence presented at trial that Defendant did not have such muscle damage. We disagree. Officer Latch testified on cross examination that both eyes will track equally "unless there's some muscle damage." Officer Latch observed at the scene, and Defendant demonstrated to the court during the trial, that his eyes track together. This is substantial evidence supporting the reasonable inference that Defendant did not have any muscle damage to his eyes, at least within the context of his performance of the HGN test.

■■■ Even if the trial court abused its discretion in admitting Officer Latch's expert opinion, Defendant has not shown prejudice as a result of that alleged error, because it did not affect the outcome of the trial in two respects. First, the court did not rely on Officer Latch's opinion as to Defendant's blind eye in making its decision. In fact, it explicitly ignored that opinion in its decision and only considered the evidence presented as to Defendant's normal eye:

> On the gaze nystagmus, ... I don't think it's reasonable that we conclude anything about his left eye since—if he's blind in his left eye, but if his right eye is reasonably normal and the officer made observations about the phenomenon in that eye, I don't have any reason to believe that any testimony to support the idea that the other eye would affect

---

**4.** When Defendant objected at trial to the admission of Officer Latch's testimony, the court actually responded: "Overrule the ob- jection. That's something you can explore on cross."

his good eye. So instead of having four out of six points on the nystagmus, he's got two out of three.[5]

Second, there was overwhelming incriminating evidence in the record outside of Officer Latch's opinion as to Defendant's performance on the HGN test on his normal eye to support the trial court's finding of guilt on the driving-while-intoxicated charge. *Rose*, 86 S.W.3d at 104 (admission of officer's opinion regarding HGN test was harmless error where other evidence of defendant's intoxication was overwhelming; including commission of traffic violation, odor of alcohol on breath, glassy eyes, officer's opinion defendant failed all three field sobriety tests, defendant's admission he "had two beers" after previous denial of drinking, and refusal to take breath test); *State v. Adams*, 163 S.W.3d 35, 37 (Mo. App.2005) (physical observations of defendant indicating intoxication, including bloodshot and watery eyes, odor of intoxicants and poor performance on field sobriety tests, as well as defendant's admission to drinking one beer, constituted sufficient evidence of intoxication to support DWI conviction; despite blood-alcohol test results below 0.08%, and defendant's argument that physical injuries affected his performance on field sobriety tests); *State v. Myers*, 940 S.W.2d 64, 65 (Mo.App.1997) (arresting officer's opinion that defendant was intoxicated was sufficient evidence of intoxication to support DWI conviction); *State v. Wilson*, 846 S.W.2d 796, 798 (Mo. App.1993) (evidence of intoxication supported DWI conviction where officer observed defendant's traffic violations, "aroma of intoxicants, watery and bloodshot eyes, and failure of two sobriety tests . . .

[a]lthough [he] passed two others"; trial court was not obliged to believe defendant's testimony, uncorroborated by medical evidence, that he failed the tests because of his two bad ankles); *State v. Corum*, 821 S.W.2d 890, 891 (Mo.App.1992) (officer's testimony concerning defendant's condition and actions, officer's opinion defendant was intoxicated, and defendant's refusal to take breathalyzer test, constitute "abundance of evidence sufficient to support a guilty verdict").

In the case at bar the Defendant was observed committing three operator based moving traffic violations—speeding, failure to use turn signal when making a turn, and stopping at an intersection about three feet over the crosswalk. Defendant was observed exhibiting physical characteristics associated with intoxication—odor of intoxicating beverage coming from his person, slurred speech, constantly reaching into his pockets and under his seat, smell of alcohol on his breath, watery eyes, glassy stare, unsteady balance, stuttering, repeating himself a lot, and spit coming out of his mouth as he spoke. Defendant admitted to drinking alcohol (one beer) after an initial denial of having had anything to drink. Defendant failed the walk-and-turn and one-leg stand standardized field sobriety tests. The arresting officer testified that in his opinion Defendant was impaired by alcohol. Defendant refused to take a breath test. From these overwhelming facts of intoxication we cannot conclude that the exclusion of the results of the HGN test on Defendant's normal eye, even if erroneous, would have changed the outcome of the trial, and therefore was

---

**5.** For each eye, the HGN test scores one point for each of the three eye movements indicative of alcohol influence. *Rose, supra* at 96. Each eye can score up to three points, for a total of six points. *Id.* A score of four or more points is an indication that the suspect is intoxicated. *Id.* In this case, Officer Latch had scored two points for each eye, one for lack of smooth pursuit, and one for nystagmus at maximum deviation. He did not score the third point because he could not establish the onset angle of nystagmus.

harmless. *Id.; Murrell,* 215 S.W.3d at 109–110. Accordingly, Point I is denied.

■ Defendant's second point on appeal contends that the trial court erred in entering judgment and sentences against him on both charges, because it applied the incorrect burden of proof, in violation of his due process rights. Defendant argues that the court's findings do not amount to "guilt beyond a reasonable doubt," but rather, the judge applied an incorrect and lesser burden of proof. In its judgment, the court found Defendant guilty on both charges. Defendant points to the following oral comments made by the Honorable J. Miles Sweeney at trial as indicators that he did not find Defendant "guilty beyond a reasonable doubt": "And then the general observations and the HGN and the walk-and-turn taken together lead me to believe that *the State's made a sufficient case.* So—and, of course, *there's no question* about the driving while revoked. So I find him guilty on both counts." (Emphasis added).

■ Defendant asserts that the language, "State's made a sufficient case" and "there's no question about the driving while revoked," indicates that Judge Sweeney applied a lesser standard than "guilt beyond a reasonable doubt." This argument has no merit. In *State v. McDonald,* 10 S.W.3d 561 (Mo.App.1999), this court held that trial judges are presumed to know the law and to apply it in making their decisions, and that Judge Sweeney, also the trial judge in that case, was presumably aware of the holding of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). *McDonald,* 10 S.W.3d at 564. In *Winship,* the Supreme Court held that "the due process clause of the Fourteenth Amendment to the Constitution of the United States protects an accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *McDonald,* 10 S.W.3d at 564. We have no doubt that in entering judgment against Defendant, Judge Sweeney applied the correct burden of proof and found Defendant guilty beyond a reasonable doubt on both charges. Accordingly, Point II is denied.

The judgment of the trial court is affirmed.

GARRISON, J., and BARNEY, J., concur.