STATE of Missouri, Respondent,

v.

**Chad Allan MOSLEY, Appellant.**

**No. ED 104296**

Missouri Court of Appeals, Eastern District, DIVISION THREE.

Filed: August 22, 2017

362

Casey A. Taylor, for Appellant.

Mary H. Moore, for Respondent.

## OPINION

Angela T. Quigless, J.

Chad Allan Mosley ("Mosley") appeals from a judgment convicting him of first-degree statutory sodomy and first-degree child molestation following a jury trial. On appeal, Mosley argues the court erred in admitting expert testimony from two witnesses concerning grooming and manipulation of victims by sexual perpetrators. We affirm.

### Factual and Procedural Background

Mosley was charged with one count of first-degree statutory sodomy, in violation of Section 566.062,[1] and one count of first-degree child molestation, in violation of Section 566.067, for having deviate sexual intercourse with Victim,[2] who was less than twelve years old, by inserting his finger into her vagina and placing her hand on his penis.

Mosley lived down the road from Victim, who lived in a trailer with her Father, Mother, and two younger siblings. Victim was born in December of 2000. Between 2010 and 2012, Mosley developed a relationship with Victim's family. Mosley became friends with Victim's Father. They would often watch movies together and help each other with projects. On several occasions, Mosley helped Father repair cars and work on other odd jobs around the house. Mosley also helped Father financially on a few occasions. When Mother and Father separated for a few months, Mosley took the children to and from the bus stop for school and helped watch the children while Father was at work. Mosley often came over to spend time with the family.

Mosley also developed relationships with Victim and her siblings. It was not unusual for Mosley to spend time alone with the children while no other adults were present. The children often visited Mosley's home, where they would play together in the woods, swing on Mosley's tire rope swing, go swimming, and play various other games. Mosley occasionally took the children to the movies, and often gave the children candy, small amounts of money, and other small gifts. At one point, Mosley asked Father if he could give Victim a cell phone. Father said no, but Mosley gave Victim an unactivated smart phone anyway.

Around the summer of 2012, when Victim was less than twelve years old, Mosley began sexually abusing Victim. The first incident occurred when Victim and Mosley were walking back to Mosley's home after playing in the woods. While giving Victim a piggy back ride, Mosley put his hands on her buttocks. When they returned to Mosley's home, they played a game called "jail." Victim "arrested" Mosley, who sat on the couch on Victim's lap with his hands behind his back. Mosley reached back, put his hand down Victim's pants, and touched the skin of her vagina. Mosley then put his finger inside Victim's vagina. Victim stated that Mosley would put his fingers inside her vagina almost every time she went to Mosley's home.

Another incident of abuse occurred in the pool. While they were swimming, Mosley held Victim down, pulled down her swimsuit bottom, put his head under the water, and attempted to perform oral sex on Victim. Victim pushed Mosley's head

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. As required by statute, Victim and her family members are not identified by name and all other identifying information has been excluded from the opinion. RSMo § 595.226 (2016).

away and pulled her swimsuit back up. Later, while they were still swimming, Mosley again held Victim down, put her hands behind her back and inside his pants, forcing her to touch his penis.

Victim first disclosed the sexual abuse to a family friend, and then to Mother. Mother told Father and then called the police. A police officer came to the home, interviewed Victim, and reported the abuse. Kelli Hodge ("Ms. Hodge"), a child abuse and neglect investigator, met with Victim and her family and referred the case to the Child Advocacy Center (the "CAC"). Victim was interviewed by Christi Leslie ("Ms. Leslie"), a forensic interviewer from the CAC. In the interview, Victim described the above incidents of sexual abuse involving Mosley. The CAC interview was recorded on video.

At trial, the State played the video of the CAC interview to the jury. The State also presented testimony from Victim, Father, Mother, the police officer who first met with Victim, Ms. Hodge, and Ms. Leslie. Victim's testimony at trial regarding the sexual abuse was consistent with the testimony from the police officer as well as her statements during the CAC interview. Mosley does not challenge the sufficiency of the evidence to support his conviction. Mosley only contests the admissibility of certain expert testimony from Ms. Leslie and Ms. Hodge.

Ms. Leslie testified that she was a trained forensic interviewer for the CAC with extensive experience interviewing children in approximately 550 cases. Ms. Leslie summarized her extensive training, including "the dynamics of children, such as recover [sic] stages, the disclosure, the process of disclosure, as well as grooming and manipulation techniques by a perpetrator, the way children respond, how they survive, the coping mechanisms, the various emotions of children going from no emotions to extreme emotions." After explaining her qualifications, Ms. Leslie described her interactions with Victim during the CAC interview and explained, based on her experience and training, the concept of grooming and manipulation. Ms. Leslie testified that "grooming" is when a sexual perpetrator does things for the victim to "let[ ] them feel that it's okay for what they're doing to that child, providing them with candy or taking them shopping, getting them comfortable in that environment to where the child doesn't believe anything is wrong with what that perpetrator is doing." Ms. Leslie also testified that sometimes this is "something that they would do to the entire family."

Defense counsel objected to Ms. Leslie's testimony on the grounds that she was not an expert qualified to discuss the subject of grooming and manipulation because she was "not a child psychologist or any type of expert in criminal psychology" and therefore the testimony was "speculative" and "not appropriate." The trial court overruled the objection and allowed the testimony.

Ms. Hodge testified that she was a child abuse and neglect investigator for the Children's Division with nearly ten years of experience investigating cases of child abuse and neglect, including between 1,500 and 2,000 cases of child abuse and 500 to 600 cases involving sexual abuse. Ms. Hodge testified about her interactions with Victim and her family while investigating the case. Ms. Hodge also testified regarding "grooming and manipulation" of victims by sexual perpetrators. Ms. Hodge testified that, "[t]ypically, the alleged perpetrator, I found in my training and experience, will give gifts to the alleged victim, even go as far as to give gifts and do things with the victim child's parents or legal guardians," and that the purpose of this behavior is "to gain their trust."

Defense counsel objected to Ms. Hodge's testimony regarding grooming and manipulation on the grounds that she was not an expert qualified to testify about the subject because "[t]his is an area where we need a child psychologist or some other highly trained professional to be in here to testify." The court overruled the objection and allowed the testimony.

The jury convicted Mosley as charged of first-degree statutory sodomy and first-degree child molestation. Mosley filed a motion for new trial arguing, in pertinent part, that the trial court abused its discretion in admitting the testimony about "grooming and manipulation" because neither Ms. Leslie nor Ms. Hodge was an expert qualified to testify about this subject. The trial court denied the motion for a new trial. The trial court sentenced Mosley, as a prior offender, to thirty years in prison on each count, with the sentences to be served concurrently. This appeal follows.

### Standard of Review

 The trial court has broad discretion to admit or exclude expert testimony and will be reversed only for an abuse of discretion. *State v. Pickens*, 332 S.W.3d 303, 318 (Mo. App. E.D. 2011) (citing *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991)). The trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *Pickens*, 332 S.W.3d at 318.

### Discussion

In his sole point on appeal, Mosley argues the trial court abused its discretion in overruling his objection and allowing Ms. Leslie and Ms. Hodge to give expert testimony about the practice of grooming and manipulation of victims and their families by sexual perpetrators, in that neither witness was an expert on the topic, and the testimony was speculative because neither witness testified that she had knowledge of facts in this case that supported giving the testimony about grooming and manipulation. We disagree.

 The test for admissibility of expert testimony is "whether it will be helpful to the jury." *Pickens*, 332 S.W.3d at 321. Expert testimony is helpful to the jury if the witness has specialized knowledge or skill from education or experience that gives the witness knowledge of the subject that is superior to that of an average juror. *State v. Love*, 963 S.W.2d 236, 241 (Mo. App. W.D. 1997); William A. Schroeder, *Missouri Evidence*, 22A Mo. Prac. 702:1, n. 44-46 (4th ed. 2012). "The extent of an expert's experience or training in a particular field goes to the weight, not the admissibility, of the testimony." *State v. Partridge*, 122 S.W.3d 606, 609 (Mo. App. E.D. 2003). Expert testimony is generally admissible when the testimony concerns a subject "upon which the jurors, for want of experience or knowledge, would otherwise be incapable of drawing a proper conclusion from the facts in evidence." *State v. Lawhorn*, 762 S.W.2d 820, 822 (Mo. banc 1988). However, expert testimony is generally inadmissible if the subject of the testimony is one of "everyday experience, where the jurors are competent to decide the issues." *Pickens*, 332 S.W.3d at 321.

 We find the trial court did not abuse its discretion in admitting expert testimony from Ms. Leslie and Ms. Hodge concerning the concept of grooming and manipulation. Both witnesses had specialized knowledge from their experience and training in interviewing child victims of sexual abuse. Ms. Leslie testified she received extensive training about "the dy-

namics of children, such as recover [sic] stages, the disclosure, the process of disclosure, as well as *grooming and manipulation techniques by a perpetrator*, the way children respond, how they survive, the coping mechanisms, the various emotions of children going from no emotions to extreme emotions" (emphasis added). Ms. Hodge stated that her testimony concerning grooming and manipulation was based on her ten years of experience investigating cases of child abuse and neglect, including between 1,500 and 2,000 cases of child abuse and 500 to 600 cases involving sexual abuse. This experience and training gave the witnesses specialized knowledge of the subject of grooming and manipulation that was superior to that of an average juror. *See Love*, 963 S.W.2d at 241.

Given the facts of this case, testimony explaining the concepts of grooming and manipulation was helpful to the jury because the subject is not one of "everyday experience, where the jurors are competent to decide the issues." *Pickens*, 332 S.W.3d at 321. There was evidence that Mosley did many nice things for Victim's family, and that he routinely gave money and other small gifts to Victim and her younger siblings. Without an explanation of the concept of grooming and manipulation, the jury would have been incapable of understanding that Mosley's kindness was an effort to gain the victim's trust and make her feel comfortable with the sexual abuse, which is a common behavior for sexual perpetrators.

This Court has previously held that testimony from a forensic interviewer regarding the concept of grooming in a criminal prosecution involving sexual abuse against a minor is admissible expert testimony. *See Tucker v. State*, 468 S.W.3d 468, 476 (Mo. App. E.D. 2015). In *Tucker*, this Court held that trial counsel was not ineffective for failing to object to testimony

from a forensic interviewer regarding "general background information about the concept of grooming" in a criminal prosecution involving sexual abuse because this testimony was admissible expert testimony. *Id.* The testimony at issue in *Tucker* "consisted simply of a brief explanation of the concept [of grooming] and application of that concept to explain why [the witness] had asked [the victim] certain questions during the forensic interview." *Id.*

Here, as in *Tucker*, the testimony about grooming was relevant and admissible because it was "helpful background information about a sexual abuse concept not understood by the average Juror." *See id.* Although *Tucker* involved an appeal from the denial of post-conviction relief, rather than a direct criminal appeal, we find this distinction insignificant because this Court's holding was dependent upon a finding that the testimony from a forensic interviewer concerning the general concept of "grooming" in sexual abuse cases was properly admitted as expert testimony, which is the precise issue involved in this case.

 Mosley also argues the expert testimony concerning grooming and manipulation was inadmissible because neither witness testified that she had knowledge of facts in this case that supported giving the testimony about grooming and manipulation. We acknowledge that, as a matter of foundation, "[a]n expert's opinion must be based on facts and data which give the opinion sufficient probative force to render it substantial evidence." *State v. Pettit*, 976 S.W.2d 585, 590 (Mo. App. W.D. 1998). However, neither Ms. Leslie nor Ms. Hodge actually offered an opinion as to whether Mosley's conduct constituted "grooming and manipulation" of Victim. Rather, the witnesses simply explained a concept not understood by the average juror to aid the jury in drawing its own

conclusion. It is not improper for an expert witness to describe generalized behavior and explain generic principles and characteristics to the jury when relevant to the facts and issues in the case. *See State v. Skillicorn*, 944 S.W.2d 877, 892 (Mo. 1997) (permissible for FBI agent to explain that defendants generally minimize their involvement in a crime). When an expert witness defines or explains a little known or complex concept to the jury without opining as to how the concept applied to the defendant, this is not an expert opinion that must be based on specific knowledge of the facts of the case.

 Moreover, inadequate foundation was not the basis of Mosely's objections at trial, and the issue was not raised in Mosley's motion for a new trial. The sole basis for Mosley's objections at trial was that Ms. Leslie and Ms. Hodge were not qualified to testify concerning the subject of grooming because neither witness was a "child psychologist or any type of expert in criminal psychology," and the topic "is an area where we need a child psychologist or some other highly trained professional to be in here to testify." Therefore, we find Mosley's argument that the testimony lacked the required foundation is not preserved for appeal. *State v. Butler*, 24 S.W.3d 21, 25-26 (Mo. App. W.D. 2000). Appellate courts cannot broaden or change allegations of error on appeal, and will not convict the trial court of error on an issue that was not put before it to decide. *State v. Lane*, 415 S.W.3d 740, 750 (Mo. App. S.D. 2013). "It is particularly important that where an inadequate foundation has been laid for admission of evidence that the objection made be specific as such foundation deficiencies can frequently be remedied." *State v. Blue*, 875 S.W.2d 632, 633 (Mo. App. E.D. 1994). "We will not review the contention of inadequate foundation raised for the first time on appeal."

*Id.* Mosley does not request plain error review, and we decline to exercise our discretion to review for plain error in this case.

Accordingly, we find the trial court did not abuse its discretion in overruling Mosley's objection and admitting expert testimony from the witnesses concerning the general concept of "grooming an manipulation" of victims by sexual perpetrators.

### Conclusion

The judgment of the trial court is affirmed.

Gary M. Gaertner, Jr., P.J., and Robert M. Clayton III, J., Concur.