

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,    )
                      )
    Plaintiff-Respondent,    )
                      )
vs.                   )    No. SD37894
                      )
ELMER ANTONIO NIETO,    )    **Filed:  May 7, 2024**
                      )
    Defendant-Appellant.    )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

The Honorable Gayle L. Crane, Judge

**<u>AFFIRMED AND REMANDED WITH INSTRUCTIONS</u>**

Elmer Antonio Nieto ("Nieto") appeals the trial court's judgment convicting him of child molestation in the second degree following a jury trial.  *See* section 566.068.[1] Nieto raises three points on appeal alleging the trial court plainly erred by failing to declare a mistrial *sua sponte* in response to the State's statement in closing argument that Nieto could not explain the mark on the child's body because that violated Nieto's right against self-incrimination and due process in that it was an improper comment on his failure to testify (Point I), and it was an attempt to mislead the jury on the burden of proof

---

[1] All references to statutes are to RSMo 2016, including any applicable changes effective January 1, 2017, unless otherwise indicated.

1

(Point II). In Point III, Nieto claims the trial court erred in denying his motion for judgment of acquittal at the close all evidence because "the State failed to prove beyond a reasonable doubt that Mr. Nieto committed" child molestation in the second degree. We determine none of the three points have merit but remand to the trial court for it to correct the judgment *nunc pro tunc*.

### Factual Background and Procedural History

Victim, being eight years old, lived with her mother ("Mother") and siblings. Nieto had been dating Victim's grandmother ("Grandmother") for 25 years, and Victim lived with them for a year after Victim's family immigrated to the United States from El Salvador. On August 16, 2021, Mother borrowed Grandmother's car and took Victim and her siblings to shop for groceries. When they returned the car to Grandmother, Nieto drove Mother, Victim, and the other children to their home.

When they got home, Victim lifted her blouse to wipe the sweat off her face. Mother noticed a mark on Victim's left breast that looked like a hickey and asked Victim how she got that mark. Victim started crying and said she was afraid. Victim stated Nieto "had done that to her on her chest[,]" had put his "private parts" on her several times, and asked Victim to touch his private parts. Mother called her sister and Grandmother, who both came to Mother's home. Grandmother accused Victim of lying and said they could work it out privately. Mother then called the police.

An ambulance came to Mother's home and took Victim's vital signs and temperature, and law enforcement told Mother to take Victim to the hospital. Mother took Victim to the hospital that evening, but they were never seen. Later the next morning, Mother took Victim to the Children's Advocacy Center ("CAC") for a forensic

2

interview.  Victim told the interviewer that Nieto put his mouth on her skin and closed his teeth down.

The State charged Nieto with one count of statutory rape in the first degree (Count I), statutory sodomy in the first degree (Count II), and child molestation in the second degree (Count III).  At trial, Victim's brother testified he and his siblings spent two to three days a week at Grandmother's house while Mother worked.  He also testified that Victim got bigger, more significant gifts than the others whenever Nieto gave gifts to the children.  Nieto also took Victim to another room and locked the door almost every time she visited.  Victim testified Nieto grabbed her in Grandmother's room and bit and bruised her chest with his mouth after she and her family came back from shopping on August 16, 2021.  She also recounted Nieto putting his mouth between her legs "[t]hree times a day."  A clinical child therapist from the CAC testified that Victim described Nieto pulling her pants down "when he put it in" on five separate occasions.  From this evidence, the jury found Nieto guilty of child molestation (Count III) but not guilty of statutory rape (Count I) and statutory sodomy (Count II).

### Points I and II:  Plain Error Review is not Warranted Without a Facial Showing of Manifest Injustice or Miscarriage of Justice

Nieto claims the trial court erred when it failed to declare a mistrial *sua sponte* during the State's closing argument in Points I and II.  He claims in Point I that the State's statement to the jury "that the defense could not explain the mark" on Victim's body was an improper comment on Nieto's failure to testify, and he casts the same statement under Point II as an attempt to mislead the jury on the State's burden of proof.  He admits he failed to preserve both points for appeal and requests plain error review.

<u>Standard of Review</u>

Plain error review for a trial court's failure to declare a mistrial *sua sponte* is "extremely limited." ***State v. Stites***, 266 S.W.3d 261, 269 (Mo. App. S.D. 2008) (quoting ***State v. Collins***, 150 S.W.3d 340, 349 (Mo. App. S.D. 2004)). This Court will not review a claim for plain error unless it "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." ***State v. Perkins***, 640 S.W.3d 498, 501 (Mo. App. S.D. 2022) (quoting ***State v. Brandolese***, 601 S.W.3d 519, 526 (Mo. banc 2020)). Once shown, this Court may determine whether the claimed error resulted in actual manifest injustice or miscarriage of justice. ***State v. Minor***, 648 S.W.3d 721, 731 (Mo. banc 2022). Unless manifest injustice or miscarriage is shown, an appellate court should decline to exercise plain error review. ***Brandolese***, 601 S.W.3d at 526. The alleged error must be evident, obvious, and clear; as well as outcome determinative. ***Minor***, 648 S.W.3d at 731.

<u>Analysis</u>

Criminal defendants maintain a constitutional and statutory right to not testify. U.S. Const. amend. V; Mo. Const. art. I, section 19; section 546.270; Rule 27.05(a).[2] The State is forbidden from commenting on the exercise of this right directly or otherwise. ***State v. Rice***, 573 S.W.3d 53, 75 (Mo. banc 2019); ***State v. Barnum***, 14 S.W.3d 587, 592 (Mo. banc 2000). A direct reference "is made when the prosecutor uses words such as 'defendant,' 'accused' and 'testify' or their equivalent[,]" whereas an "indirect reference is one reasonably apt to direct the jury's attention to the defendant's failure to testify." ***State v. White***, 291 S.W.3d 354, 359 (Mo. App. S.D. 2009) (quoting ***State v. Neff***, 978

---

[2] All rule citations are to Missouri Court Rules (2024), unless otherwise indicated.

4

S.W.2d 341, 344 (Mo. banc 1998)). An indirect reference requires reversal only if the State exhibits a calculated intent to magnify the defendant's decision to the jury. *Rice*, 573 S.W.3d at 75. The State must also not misstate the burden of proof to the jury or attempt to shift its burden onto the criminal defendant. *See State v. Campbell*, 600 S.W.3d 780, 793-94 (Mo. App. W.D. 2020) (analyzing whether the State's closing statement improperly shifted the burden of proof); *see also State v. Brightman*, 388 S.W.3d 192, 201-02 (Mo. App. W.D. 2012) ("When a prosecutor seriously misstates the law so as to lower the State's burden of proof, it is error.").

Courts review the propriety of a State's closing argument "in the context of the entire record." *State v. Boyd*, 659 S.W.3d 914, 929-30 (Mo. banc 2023). "Statements made in closing argument will rarely amount to plain error, and any assertion that the trial court erred for failure to intervene sua sponte overlooks the fact that the absence of an objection by trial counsel may have been strategic in nature." *White*, 291 S.W.3d at 359 (quoting *State v. Cole*, 71 S.W.3d 163, 171 (Mo. banc 2002)). The statement at issue here came from the State's rebuttal to Nieto's closing statement. Nieto challenged whether the State proved the mark on Victim's chest was a hickey. He noted a nurse practitioner testifying for the State could not independently confirm the mark was a hickey. In response, the State focused on the lack of evidence disputing the mark:

> And then you look at [Victim] – and you look at [Victim] and this picture (indicating) was taken that day that she went to the CAC. And this (indicating) is the hickey. And [Mother] called it a hickey. And [the nurse practitioner] called it a hickey. And the defense can't explain this. There's been no explanation for this. This is where this came from. There's no explanation of how she got that. She told how she got that over and over and over again. This can't be explained.

Nieto claims the trial court's failure to declare a mistrial at this point was outcome-determinative error because this statement about the hickey related to the only offense the jury found him guilty of – child molestation.

However, and even if the State directly referred to Nieto's decision not to testify or somehow misstated or shifted the burden of proof, Nieto has not facially established substantial grounds for believing manifest injustice or miscarriage of justice resulted from the State's isolated statement in closing argument given that the jury was otherwise properly instructed on both grounds. *See State v. Green*, 307 S.W.3d 197, 202 (Mo. App. S.D. 2010) ("[W]hen the jury is provided with the correct trial court instructions giving the definition of reasonable doubt it cures any harm from an erroneous statement of reasonable doubt by the prosecutor."); *see also State v. Garrison*, 292 S.W.3d 555, 560 (Mo. App. S.D. 2009) (finding no manifest injustice from a statement about a criminal defendant not testifying "because the jury was properly instructed"). Further, the State's comment did not necessarily imply that Nieto did not explain the mark. The "defense," while not required to do so, could have presented other evidence that might explain the mark's nature and presence; it did not have to be seen as the absence of direct testimony by Nieto.

Here, the trial court's submitted jury instructions, as read to the jury before closing arguments at the end of the trial, explained Nieto had no obligation to testify, that the jury could draw no inference from his decision to not testify, and that the State bore the burden of proof. "A jury is presumed to follow the circuit court's instructions." *Minor*, 648 S.W.3d at 731. Nieto must therefore allege more than a portion of the State's closing was improper to establish a facial claim for manifest injustice or miscarriage of

6

justice. *See* **State v. Martin**, 661 S.W.3d 337, 341 (Mo. App. S.D. 2023) ("[E]ven highly improper remarks during closing argument have been found to not rise to the level of a manifest injustice warranting plain error review."); *see also* **State v. Ryland**, 533 S.W.3d 742, 750 (Mo. App. W.D. 2017) ("Missouri courts have considered numerous cases where the State was alleged to have misstated the law during closing arguments and found no manifest injustice based on the jury having been properly instructed on the law by the trial court.").

Nieto failed to facially establish substantial grounds for believing manifest injustice occurred, and we decline to review Points I and II for plain error. Points I and II are denied.

**Point III: There was Sufficient Evidence to Find Guilt Beyond a Reasonable Doubt**

Standard of Review

Nieto argues in Point III that the trial court erred by not granting his motion for judgment of acquittal at the close of all the evidence because there was insufficient evidence to prove he committed the offense of child molestation in the second degree beyond a reasonable doubt. When reviewing the sufficiency of the evidence, we consider whether any rational fact-finder could have found the defendant guilty of the essential elements of the offense beyond a reasonable doubt. **State v. Nash**, 339 S.W.3d 500, 509 (Mo. banc 2011). "[A]ll evidence favorable to the State is accepted as true, including all favorable inferences drawn from the evidence." **Id.** Our evaluation is not an opportunity to "weigh the evidence anew." **State v. Johnson**, 674 S.W.3d 790, 792 (Mo. App. S.D. 2023) (quoting **Boyd**, 659 S.W.3d at 925).

7

One commits the offense of child molestation in the second degree by subjecting a child who is less than 12 years old to sexual contact. Section 566.068.1(1). "Sexual contact" includes touching "the breast of a female person" "for the purpose of arousing or gratifying the sexual desire of any person[.]" Section 566.010(6), RSMo Supp. 2017. "In assessing whether a touching is for the purpose of arousing or gratifying sexual desire rather than being an innocent touching, a fact-finder looks at the circumstances of the particular case." *State v. Willis*, 239 S.W.3d 198, 201 (Mo. App. S.D. 2007) (quoting *State v. Morton*, 229 S.W.3d 626, 630 (Mo. App. S.D. 2007)). Reliance on circumstantial evidence is necessary because direct evidence of a person's mental state is rarely available. *Id.*

Nieto argues the State produced "no evidence" he touched Victim's breast "for the purpose of arousing or gratifying his sexual desire." However, Victim's testimony alone was sufficient to establish Nieto's perverse motive. *See State v. Porter*, 439 S.W.3d 208, 211 (Mo. banc 2014) ("[A] witness's testimony is sufficient evidence to sustain a conviction . . . ."). Victim told Mother that Nieto made the mark on her chest, and she repeated this accusation during her forensic interview. We have noted "[t]ouching a woman's vagina is an inherently sexual act, which can alone" be evidence of an intent to gratify a sexual desire. *State v. Schachtner*, 611 S.W.3d 885, 894 n.7 (Mo. App. S.D. 2020) (quoting *State v. Ganzorig*, 533 S.W.3d 824, 830 (Mo. App. E.D. 2017)). Touching a woman's breast can be similarly sexual, especially when done with one's mouth. *See State v. Davis*, 564 S.W.3d 649, 654 (Mo. App. W.D. 2018) (evidence of touching victim's breasts "on three separate occasions" was sufficient to deduce a

sexual purpose); *see also* **State v. Rogers**, 529 S.W.3d 906, 917 (Mo. App. E.D. 2017) ("Although the record lacked specific testimony suggesting sexual gratification, . . . a juror believing all of the foregoing could conclude that [the defendant] touched Child's genitals and breasts for sexual gratification."). Victim's brother also reported Nieto taking Victim to a locked room almost every time they visited and giving Victim bigger, more significant gifts than the other children. These acts speak to Nieto isolating and grooming Victim, both of which the jury could consider when determining Nieto's motivations. *See* **State v. Mosley**, 526 S.W.3d 361, 366 (Mo. App. E.D. 2017) (describing the use of gifts to groom children as "a common behavior for sexual perpetrators").

Nieto additionally focuses on the lack of DNA evidence and Mother's motivation to lie about sexual abuse to help her immigration status. From this, and other alleged inconsistencies, Nieto concludes the State contradicted its own case. This framing fundamentally misunderstands the appellate standard of review for sufficiency of the evidence claims. Sufficient evidence does not equate to uncontradicted evidence. "If circumstantial evidence supports equally valid inferences, it is up to the fact-finder to determine which inference to believe." **Johnson**, 674 S.W.3d at 793 (quoting **State v. Hilleman**, 634 S.W.3d 709, 713 (Mo. App. S.D. 2021)). Nieto tried to counter the State's narrative, but it "was the jury's province to weigh the theories offered by the State and the defense[.]" **Nash**, 339 S.W.3d at 510; *see also* **State v. Perry**, 275 S.W.3d 237, 249 (Mo. banc 2009) ("The jury could have believed [the defendant's] explanations, but it did not have to do so."). We must defer to the jury's assessment of the evidence, and

Nieto cannot use a sufficiency-of-the-evidence challenge to relitigate that evaluation. *Johnson*, 674 S.W.3d at 792. Point III is denied.

**Remand is Required to Correct the Judgment *Nunc Pro Tunc***

While we have denied all of Nieto's points on appeal, remand is still required to correct the trial court's judgment *nunc pro tunc*. "The power to enter a *nunc pro tunc* order is a common law power derived from a court's jurisdiction over its records." ***State ex rel. Poucher v. Vincent***, 258 S.W.3d 62, 65 (Mo. banc 2008) (quoting ***Pirtle v. Cook***, 956 S.W.2d 235, 240 (Mo. banc 1997)). We may invoke this power in criminal cases to correct clerical errors "if the written judgment does not reflect what actually was done." ***State v. Christianson***, 642 S.W.3d 793, 801 (Mo. App. S.D. 2022) (quoting ***State v. Smith***, 579 S.W.3d 284, 290 (Mo. App. S.D. 2019)); *see also* Rule 29.12(c).

In this instance, the written judgment reflects Count I for statutory rape and Count II for statutory sodomy were "Dismissed by Prosecu/Nolle Pros[.]" This is contrary to the jury's verdicts, which found Nieto not guilty of both offenses. The trial court's docket entry created after the trial proceedings confirms the jury found Nieto not guilty of the offenses charged in Counts I and II. Also contrary to the jury's finding of guilt under Count III for child molestation in the second degree, the judgment states Nieto's "[g]uilty plea" disposed of Count III. "Because the trial court's written judgment does not accurately reflect the [jury's] verdicts, we must remand this case with instructions to the trial court to enter a judgment *nunc pro tunc*." *Christianson*, 642 S.W.3d at 802.

**Conclusion**

The trial court's judgment is affirmed. We remand the matter to the trial court solely for it to enter a judgment *nunc pro tunc* to correctly reflect the jury's verdicts of

10

not guilty under Counts I and II and guilty under Count III.  The trial court is instructed to enter a new judgment *nunc pro tunc* reflecting this correction.


JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JEFFREY W. BATES, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS